Schwartz v. Germania Life Insurance Co.

MARY SCHWARTZ

*vs.*

GERMANIA LIFE INS. CO.

Defendant is a life insurance company, having its home office in New York, and a local agency in St. Paul in charge of one Ferdinand Willius. On September 1, 1870, plaintiff made a written application to defendant (through said Willius) for insurance upon the life of Freidolin Schwartz, her husband, and on the same day Willius forwarded the application to the home office. September 9, Willius received a letter (dated September 5) from the home office acknowledging receipt of the application, and enclosing a policy (bearing date September 5) on the life aforesaid in the usual form of policies of endowment assurance. It provides for the payment of annual *premiums* of $62.88 each, the first to be paid in hand, the rest respectively to be paid on or before the fifth day of September in every year during the continuance of the policy. Willius offered to deliver this policy to Schwartz (who appears to have represented himself and plaintiff in the whole business), upon payment of the premium. Schwartz declined to pay the same, and at his request the policy was, on October 13, returned to the home office, with a request that it be changed for a policy providing for semi-annual instead of annual payments. October 25, Willius received a letter from the home office acknowledging receipt of the returned policy and of his letter requesting the above mentioned change, and enclosing another policy like the first in all

Schwartz v. Germania Life Insurance Co.

respects, save that it provided for the payment of semi-annual premiums, $32.07 in hand, and $32.07 to be paid on or before the fifth day of March and September in every year during the continuance of the policy.    October 13, Freidolin Schwartz was attacked with a dangerous illness of which he died October 29.    October 25, after the arrival of the second policy, plaintiff went to the office of Willius, inquired for the policy, and was informed that it had come.    Upon asking if she could have it, she was told that she could not, because her "husband was taken sick."    Thereupon, having requested that the premium money be taken, which was refused on the ground that "her husband was sick," she tendered the premium money, but defendant's agent refused to receive it for the sole reason that "her husband was sick."    The second policy was never delivered, nor offered to be delivered, and about November 1, was returned to defendant's home office, at defendant's request.    There was testimony in the case not contradicted, and tending to show that defendant's general instructions to Willius were to deliver policies on payment of the premium, provided the person whose life was to be insured was in health at the time of such delivery, but there was no evidence going to show that these instructions were known to plaintiff.    *Held*, that plaintiff's application was a proposition to defendant; that when Willius offered the first policy to Schwartz, upon payment of the first premium, defendant thereby signified its acceptance of such proposition, thereby offering to insure the life of Schwartz by delivering the policy upon prepayment of the first premium in hand.    *Held* further, that the refusal to make such pre-payment was a refusal by plaintiff to comply with the terms of her own proposition, and, in effect and fact, a refusal to receive the policy at all, and that under such circumstances defendant was not bound to plaintiff by any contract of insurance, or by any agreement to enter into a contract of insurance.    *Held* further, that the policy having been returned to the home office, at plaintiff's instance, it was utterly inoperative as a foundation for any rights upon plaintiff's part.    *Held* further, in view of the foregoing conclusions, that if there was any contract concluded between the parties, this result must have been effected by the second policy, and by what took place in reference thereto.    *Held* further, that plaintiff's application being a mere proposal, defendant was at liberty to accept or decline the same, at its own option, and, therefore, upon the facts appearing in this case, at liberty to accept the same upon such terms and conditions as it saw fit to impose.    It was, therefore, competent for defendant to transmit its policy to its local agent with instructions, general or special, to deliver the same to plaintiff upon pay-

ment of the first premium, provided her husband was in good health at the time of such delivery. In such case the transmission of the policy to the agent would go no further than to signify defendant's acceptance of plaintiff's proposition *on condition* that her husband was in good health. The agent's refusal to deliver the policy, because the husband was not in good health, would not be an attempt on his part to alter the contract, or to impose terms other than those which had been agreed upon. There being no *action* upon defendant's part except the transmission of the policy to its own agent to be delivered (upon payment of premium) upon the condition above mentioned, there would be no *contract* made, nor any *terms* agreed upon, save such as embraced such condition. If the instructions under which Willius refused to deliver the policy were in fact given, the case is one in which the agent has refused to perform an act which would bind his principal, and by virtue of which, if performed, plaintiff would acquire certain rights against such principal, and has refused to do this because instructed by his principal so to do, If such instructions were in fact given, plaintiff acquired no right to the second policy, or to a contract of insurance, except such as was subject to the condition of her husband's good health. *Held* further, that in this instance it was not necessary for plaintiff to bring the amount of her tender into court, the case being one in which if she is entitled to recover at all, defendant may receive the premium money in the way of a deduction from the sum of her recovery. *Held* further, that as the evidence tended to show an absolute refusal to receive the tender, the *manner* in which the testimony tended to show that it was made was sufficient.

On or about the 1st of September, 1870, plaintiff made an application to Ferdinand Willius, agent of the defendant, at St. Paul, for a policy of insurance upon the life of her husband, Freidolin Schwartz. The application was forwarded to the home office of defendant, at New York, and by due course of mail a policy was returned to Willius, the agent. The policy was dated September 5th, 1870, and payment of the premium was by the terms of the policy required annually. The agent sent the policy to the assured, who declined to receive it, and refused to pay the premium. By an arrangement between the assured and the agent, it was proposed that

Schwartz v. Germania Life Insurance Co.

the terms of the policy should be changed so as to make the payment of the premium semi-annual, instead of annual, and the company was advised of the arrangement, and returned a policy of the same date as the previous one, containing such change as to payment of the premium, which was received by the agent on the 25th of October, 1870. On or about the 13th of October, 1870, Freidolin Schwartz, the assured, was taken ill, and died on the 29th of the same month. The last mentioned policy was never delivered to the assured, nor to the plaintiff, though she tendered the amount of the premium to the agent and demanded the policy on or about the date of its receipt by him. (October 25th, 1870.) Proofs of the death of the assured were duly made and served upon the company, with notice that the plaintiff claimed the amount of the policy, less the sum tendered for premium. This action was brought in the court of common pleas, Ramsey county, to recover such amount claimed, and was tried therein, resulting in a verdict for the plaintiff. Defendant moved for a new trial, which was denied, and from the order denying the same an appeal was taken to this court. The exceptions taken upon the trial are sufficiently stated in the opinion.

Lampreys, for Appellant, cited the following authorities; 3 *Robt.* 232 ; 13 *Minn.* 483 ; 25 *Conn.* 542; 35 *N. H.* 328; 43 *N. H.* 176 ; 6 *Minn.* 402 ; 17 *Maine,* 391 ; 17 *Iowa,* 158 ; 14 *Iowa,* 115 ; 21 *Iowa,* 590 ; 28 *Ill.* 463 ; 35 *Ill.* 158 ; 15 *Abb. Pr.* 367 ; 43 *N. Y.* 283 ; *Flanders on Ins.* 109, 122, 123 ; 9 *Howard,* 370 ; 30 *Mo.* 46 ; 3 *Hill.* 161 ; 98 *Mass.* 539 ; 11 *Paige,* 547 ; 103 *Mass.* 244 ; 4 *Wheaton,* 228 ; 23 *Penn. St.* 92; 3 *Conn.* 357 ; 10 *Pick.* 325 ; 1 *Gray,* 337 ; *Am. Lea. Cases,* 544, *and cases cited ;* *Xenos vs. Wickham,* 13 *C. B.* (*N. S.*) 381 ; 3 *Kernan,* 599, 632 ; 3 *Hill.* 263 ; 18 *Johns.* 362; 36 *N. Y.* 157 ; 20 *N. Y.* 293 ; *Flanders on Ins.* 104, 105, 106, *note* ; 29 *Barb.* 312 ; 2 *Dutch.*

268 ; 19 *Abb. Pr.* 217 ; 48 *Ill.* 68 ; 48 *Ill.* 145 ; 48 *Ill.* 195 ; 28 *N. Y.* 153 ; 40 *Ill.* 401 ; 4 *Allen*, 116 ; *Flanders on Ins.* 138 ; 8 *Ohio,* 501 ; 6 *East.* 571 ; 3 *Allen,* 360 ; 10 *Bosw.* 82 ; 5 *T. R.* 695 ; 27 N. Y. 216 ; 13 *Allen,* 320 ; *Flanders on Ins.* 205 ; 6 *Casey,* 315 ; *Elfelt vs. Smith,* 1 *Minn.* 125 ; *Fish vs. Dodge,* 4 *Denio* 311 ; 2 *W. Black.* 1300 ; 2 *N. H.* 322 ; 1 *Buls.* 49 ; *Dox vs. Day,* 3 *Wend.* 356, 362 ; 17 *Johns.* 111 ; 1 *Ch. Pl.* 339 ; *Prescott vs. Maxwell,* 48 *Ill.* 82 ; 13 *Minn.* 114.

Henry J. Horn, for Respondent, cited the following authorities : *Flanders on Ins. pages* 105, 106, 118, 119, 129, *and authorities cited* ; *Kohne vs. Ins. Co. of North America,* 1 *Wash. C. C. R.* 93 ; *Tayloe vs. Merch, F. Ins. Co.,* 9 *How.* 390 ; *Palm vs. Medina Ins. Co.,* 20 *Ohio,* 529 ; *Bragdon vs. Appleton Mut. F. Ins. Co.,* 42 *Marine,* 259 ; *Audubon vs Excelsior Ins. Co.,* 27 *New York,* 216, 223 ; *Hallock vs. Ins. Co.,* 2 *Dutcher,* 268 ; *same case,* 3 *Dutcher,* 645 ; *Goodall vs. N. E. Mut. F. Ins. Co.,* 5 *Fost.* (*N. H.*) 164, 192, 193 ; *Hamilton vs. Lycoming Ins. Co.,* 5 *Barr.* 339 ; *City of Davenport vs. Peoria Mar. and F. Ins. Co.,* 17 *Iowa,* 276 ; *Holmes vs. Holmes,* 11 *Barb.* 137 ; *Judd vs. Ensign,* 6 *Barb.* 258 ; *Gen. St. ch.* 66, *p.* 459 ; *Babcock et. al vs. Sanborn et al.,* 3 *Minn.* 144 ; *Hawke vs. Banning,* 3 *Minn.* 67 ; 1 *Gra. & Waterman on New Trials,* (*Ed.* 1855) *par.* 341, 343 ; *Dox vs. Day,* 3 *Wend.* 357.

*By the Court.*—BERRY, J.—The principal controversy in this case relates to the law applicable to certain facts with regard to which there is very little difference between the parties.

The defendant is a life insurance company, having its home office in the city of New York, and a local agency in St. Paul, in charge of one Ferdinand Willius. On the first day of September, 1870, the plaintiff made a written application to defendant (through said Willius) for insurance upon the life of

Freidolin Schwartz, her husband.   The application, among other things, contained statements that " the present state of health" of the party whose life was to be assured was good ; that he was not afflicted with any bodily defect; that the state of his health had been good theretofore, and that he had never been afflicted with any serious illness, defect, or personal injury.   It also contained the following question and answer, viz.: " Are you aware that this contract of assurance becomes valid only by the payment of the first premium ?"   Answer—"Yes." The application closed as follows, viz.: "It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that the above statements shall form the basis of the contract for insurance, and also that any untrue or fraudulent answers, any suppression of facts in regard to the party's health, or neglect to pay the premium on or before the day it becomes due, will render the policy null and void, and forfeit all payments made thereon ; also, that the policy of insurance hereby applied for shall not be binding upon this company, until the amount of premium as stated herein shall be received by said company, or some authorized agent thereof, during the lifetime of the party therein insured."

On said first day of September, said Willius, by mail, transmitted to defendant's home office the application enclosed in a letter of that date, the text of which is as follows:   " Enclosed please find application of F. Schwartz, $1,000."   On September 9th, Willius received from the home office a letter signed by defendant's president, dated September 5th, acknowledging receipt of the application and letter from Willius, and enclosing a policy on the life of Friedolin Schwartz, bearing date on said fifth September.   This policy is, in general, in the usual form of policies of endowment assurance.   It provides for the payment of *annual* premiums of $62.88 each, the

first to be paid *in hand*, the rest, respectively, to be paid on or before the fifth day of September in every year during the continuance of the policy. The policy provides further, that it is accepted upon the express condition that it shall be of *no* effect, " 1st : If the declaration," evidently referring to the application made by or for the assured, " forming part of the contract and upon the faith of which this contract is made, shall be found in any respect untrue." " 5th : If the above premiums, or any of them shall not be paid on or before the several days hereinbefore mentioned for the payment thereof respectively, or within three days thereof respectively." Willius offered to deliver this policy to Schwartz upon payment of the premium. Schwartz declined to pay the same in cash, claiming that one Rosenfield, a solicitor in the employ of Willius, had agreed to take the premium in whole or in part in board, which, however, such solicitor had no authority to do. The policy was not delivered, but at the request of Schwartz was returned on October 13th to the home office, with the request that it be changed for another policy providing for semi-annual, instead of annual payments. On October 25th, Willius received a letter from the home office acknowledging receipt of the returned policy and of his letter requesting the above-mentioned change to be made, and enclosing another policy, like the first in all respects, save that it provided for the payment of semi-annual premiums, $32.07 *in hand*, and $32.07 " to be paid on or before the fifth day of March and September in every year during the continuance of the policy." At the foot of each policy was a note as follows, viz.: " Agents holding an appointment from the company are authorized to receive premiums at or before the time when due, upon the receipt of the president or secretary of the company, but not to make, alter or discharge contracts, or waive forfeitures."

Schwartz v. Germania Life Insurance Co.

On October 13th, Freidolin Schwartz was attacked with a dangerous illness, of which he died on October 29th. On October 25th, after the arrival of the second policy, plaintiff went to the office of Willius, inquired for the policy, and was informed that it had come. Upon asking if she could have it, she was told that she could not because her " husband was taken sick." Thereupon, having requested that the premium money be taken, which was refused on the ground that her " husband was sick," she tendered the premium money, but defendant's agent refused to receive it for the sole reason that her " husband was sick." The second policy was never delivered nor offered to be delivered to plaintiff or her husband, and about the first of November was returned to defendant's home office, at defendant's request. On the 18th of March, 1871, proofs of the death of Freidolin Schwartz, and of plaintiff's claim under the policy, were transmitted by Willius to the home office. There was testimony in the case not contradicted and tending to show that defendant's general instructions to Willius were to deliver policies on payment of the premium, provided the person whose life was to be insured was in health at the time of such delivery. There is no evidence going to show that these instructions were known to the plaintiff.

Plaintiff's counsel takes the position, that these facts make out an *acceptance* by defendant of a *proposition* by plaintiff, the effect being to conclude " a contract of insurance between the parties according to the *terms* proposed." What is said in *Heiman vs. The Phœnix M. L. Ins. Co.*, 17 *Minn.* 153, would seem to be in point here. "The application for insurance is a *mere proposal* on the part of the applicant. When the insurer *signifies his acceptance* of it to the proposer, (and not before,) the minds of the parties meet and the contract is made. This acceptance must be signified by some act." Plaintiff's appli-

cation is properly characterized as a *proposition* to defendant And when Willius (defendant's agent) offered the first policy to Schwartz (who appears to be regarded by common consent as acting for the plaintiff as well as for himself in the whole business,) upon payment of the first premium, defendant thereby signified its acceptance of plaintiff's proposition. In other words, defendant thereby offered to insure the life of Freidolin Schwartz by delivering to plaintiff its policy .of insurance upon pre-payment of the first premium in hand. But this payment was refused. This was a refusal by plaintiff to comply with the terms of her own *proposition.* It was a repudiation of the *proposition*—a rejection of the proffered *acceptance,* and, in effect and fact, a *refusal* to receive the policy at all.

Plaintiff having thus repudiated her own proposition, and refused to comply with the condition upon which the defendant signified its acceptance of her proposition as the basis of a contract of insurance into which defendant offered to enter by delivering its policy, defendant, so far as any obligation or liability to plaintiff was concerned, stood precisely where it would have stood if it had never accepted plaintiff's proposition, conditionally or otherwise. Under these circumstances defendant certainly had the right to insist that it was not *bound* to the plaintiff by any contract of insurance, or by any agreement to enter into a contract of insurance. After plaintiff had thus refused to receive the first policy, it was at *plaintiff's instance* returned to defendant's home office. We are unable to conceive why, under these circumstances, it was not utterly inoperative as a foundation for any rights whatever upon plaintiff's part, whether such rights are sought to be placed upon the ground that defendant had insured, or upon the ground that it had agreed to insure the life of her husband. If we are right it follows that, if there was any contract concluded between the parties to this action, this result must

have been effected by the second policy, and by what took place in reference thereto.

The facts already detailed show that plaintiff's request that the policy should provide for semi-annual, instead of annual premiums was acceded to, and that accordingly, a second policy providing for such semi-annual premiums was transmitted from defendant's home office to defendant's agent (Willius,) at St. Paul. Plaintiff's counsel claims that this second policy was not a new contract ; that the original contract was not superseded or rescinded by it, " but only modified in relation to the manner of payment;" that it "was really an *affirmation* of the original contract; that it was intended to be but a re-draft of the first as modified by mutual consent." However ingenious these suggestions may be, it is evident that they possess little or no force if the views which we have already expressed in regard to the first policy, and its utter inoperativeness as a contract of any kind, or as evidencing a contract of any kind, are sound. As we have no doubt of their soundness we are forced to the opinion before expressed, that if there was any contract concluded between the parties, this result must have been brought about by the second policy, and the facts which transpired in reference to it. The second policy was never delivered nor offered to be delivered to plaintiff, or to any one for her. Yet, *independent* of this policy there is nothing in the case tending to show any binding acceptance of plaintiff's proposition, or any agreement to insure or contract of insurance. If, then, defendant in any way signified its acceptance of plaintiff's *proposition*, so that a contract was concluded between the parties, it must have done it by transmitting the second policy to Willius, its agent, for the purpose of having the same delivered to plaintiff upon payment of the first premium in hand. And if Willius *had no* authority, discretion or duty in the premises, save only to

deliver the policy upon payment of the first premium, then we can see no good reason why the transmission of the policy to him might not well be regarded as a signifying by defendant of its acceptance of plaintiff's proposition; nor any good reason why payment or tender of the first premium to such agent (even if delivery of the policy was withheld) would not have been completely effectual to entitle the plaintiff to the full benefits of the policy to the same extent as if it had been manually and unconditionally delivered. There is, however, nothing whatever in this case showing or tending to show that the defendant was under any legal obligation to accept plaintiff's proposition, or to enter into any contract of insurance thereupon, by issuing or delivering a policy, or otherwise. Plaintiff's application was a *mere proposal* which defendant was at liberty to accept or decline at its own option. And as defendant was thus at liberty to accept or decline plaintiff's proposition at its own option, it is clear that upon the facts appearing in this case defendant was at liberty to accept upon such terms, and subject to such conditions as it saw fit to impose. It was therefore competent for defendant to say to plaintiff, we will accept your application and deliver to you our policy upon payment of the first premium, provided your husband is *now* in good health; and it would be equally competent for defendant to transmit its policy to its local agent with instructions general or special, to deliver the same to the plaintiff upon payment of the first premium, provided her husband was in good health at the time of such delivery. And in such case the transmission of the policy to the agent would go no further than to signify the defendant's acceptance of plaintiff's proposition *on condition* that her husband was in good health. The agent's refusal to deliver the policy because of the fact that the husband was not in good health, would not be an attempt on his part to *alter* the contract, or impose terms other than

those which had been agreed upon as plaintiff's counsel contends. No *contract* could be made, nor any terms agreed upon, without some *action* upon the part of defendant. There being no *action* upon defendant's part except the transmission of the policy to its own agent to be delivered (upon payment of the premium) *upon the condition above mentioned,* there would be no contract made, nor any *terms* agreed upon, save such as embraced such condition.

Nor is this a case in which where an agent performs an act within the apparent scope of his authority, the act binds his principal, notwithstanding it was done in violation of private or secret instructions. The case at bar is not one in which the agent has *performed* any act in the name of his principal, under an apparent authority to perform the same, so that the party with whom he has contracted has acquired rights which the principal will not be permitted to gainsay. But if the instructions under which Willius refused to deliver the policy were in fact given, the case is one in which the agent has *refused* to perform an act which would bind his principal, and by virtue of which, if performed, the plaintiff would acquire certain rights against such principal, and has refused to do this because instructed by his principal so to do. Now, if the plaintiff had acquired any right to the policy, or to a contract of insurance except such as was subject to the condition of her husband's good health, (as we have endeavored to show that she had not, if the instructions referred to were in fact given,) then she might well contend that she was not to be deprived of that right by any private instructions given by defendant to its agent. Not having acquired any such right, (that is to say, if the instructions referred to were in fact given,) she is not in a position to insist that the policy shall be delivered to her in disregard of such instructions, or that she shall have the same rights and benefits as if it had been

delivered to her.   As the general charge of the court to the jury was entirely at variance with the views above expressed, there must be a new trial.   This disposes of what has seemed to us to be the principal and most difficult question presented by this appeal, but as there may be a new trial it is expedient that we should consider some of the other questions raised and discussed by counsel.   The question, whether the instructions, as to delivering policies provided the person whose life was to be insured was in good health, were given, being a question of fact, the plaintiff had the right to put in her testimony upon the basis that no such instructions were given. And in this view we perceive no reason why the two policies, (notwithstanding the signatures were cancelled) together with the correspondence in reference thereto between defendant and its agent Willius, were not properly received in evidence as documentary history of the case, and of the transactions between the parties in reference to the subject of the action.

We think the court was justified in receiving the evidence of what was said by Gustav Willius at the time when plaintiff went to the banking office occupied by him, Gustav, and his brother Ferdinand, (defendant's agent) since there was testimony tending to show that Ferdinand was present at the conversation, and also that Gustav was in the practice of assisting his brother in the insurance business, and of attending to the same in his brother's absence.

The 10th interrogatory addressed to Schwendler, (defendant's vice president,) inquired for the *custom* of defendant as to delivering policies.   The answer, which appears to be responsive to the interrogatory, states, among other things, a custom of the defendant not to deliver, or send policies to agents for delivery, except upon the condition that the person whose life is to be insured is in good health.   We think the interrogatory and answer were properly excluded.   Unless this

Schwartz v. Germania Life Insurance Co.

custom was shown to be known to plaintiff, or to have been communicated to Willius, as instructions, it is impossible to see its materiality in this case.

In regard to the statements contained in the application (and mentioned in the early part of this opinion) as to the health, bodily defects, &c., &c., of Freidolin Schwartz, we are of opinion that they had reference to the state of facts existing or which had existed at the date of the application, not to any which might occur subsequently to such date.   The points made by defendant in reference to the court's refusal to instruct the jury as requested upon the question of tender, do not appear to be particularly insisted upon.   It is unnecessary to say more in regard to them than that, we think, the tender sufficiently pleaded in the complaint; that it was not necessary for plaintiff to bring the amount tendered into court, the case being one in which if she is entitled to recover at all defendant may receive the premium money in the way of a deduction from the sum of her recovery, and that as the evidence tended to show an absolute refusal to receive the tender, the *manner* in which the testimony tended to show that it was made was, beyond doubt, sufficient.

We need not consider the propriety of the questions which were excluded by the court as not proper cross-examination. This objection to them can easily be obviated if a new trial should be had.   Nor need we consider the point made as to the allowance of interest on the judgment.   An amendment, allowable as a matter of course, would prevent the recurrence of the question raised.

This in effect disposes, we think, of all the important matters presented by the case.   Order refusing a new trial reversed and new trial granted.