# Alabama Gold Life Insurance Company v. Mayes, Adm'r.

*Action to Policy of Insurance.*

1. *Contract of insurance; requisites of.*—In the absence of statutory prohibition, a contract of insurance may be made by parol, or there may be a parol agreement to insure, which a court of equity will enforce ; but whether made by parol or writing, as in all other contracts, the mutual assent of the parties to all the elements and terms of the contract, is essential to its existence.

2. *Same; what does not constitute.*—B obtained from the agent of an insurance company,—who claimed to exercise no other power than to receive B's application of life insurance, the percentage of the premium and the fees for the policy, and note for the remainder of the premium, and forward the same for the rejection or acceptance of the insurance company,—a written instrument or receipt, reciting that B had made application for a policy of insurance on his life, for a given sum ; the payment of a certain part of the first annual premium, &c., and B's note for the remainder. This instrument further states, that "B was to be considered insured from the date of the receipt, *if said application shall be approved and accepted by said company*, in which case a policy shall be issued to him, and this receipt surrendered ; but if said application shall be rejected, then the amount named and the note given, shall be returned to B, and this receipt shall become null and void." This application was duly forwarded to the Insurance Company, which after a delay of several weeks, rejected the application, but did not give up the cash payment or note, no demand having been made for their return. B was taken sick about this time, and died a few weeks afterwards without being informed of the rejection of his application, and his administrator brought suit upon the receipt, as on a contract of insurance,—*held:*

1. The transaction constituted merely a proposal from B to the agent for a contract, the unqualified right of acceptance or rejection being reserved to the principal, and the proposal could not ripen into a contract, until accepted by the principal.

2. Mere delay of the Insurance Company in accepting the offer or proposal, and in returning the cash premium, for which demand was not made, did not amount to an acceptance of the proposal, and convert it into a contract.

3. The Insurance Company had the right to decline acceptance of the proposal without assigning any cause, no contract being made by the agent, who claimed no power to make any contract; and herein this case differs from those where an agent having authority to make contracts of insurance, makes one subject to approval of his principal,—as to which it is held the principal can not withhold his approval, without sufficient cause.

4. The transaction until the proposal of B for life insurance was rejected was merely preraratory to or initiatory of a contract, and was terminated absolutely by the rejection of the proposal; no other duty remaining afterwards on the Insurance Company than to return, on demand, the cash paid by B, and the note given by him.

APPEAL from Mobile Circuit Court.

Tried before Hon. H. T. TOULMIN.

Appellee, Mayes, as the administrator of George Blakely, brought this action against the appellant, Alabama Gold Life Insurance Company, to recover the amount of a policy, alleged to have been issued by it on the life of his intestate. The facts material to the decision, are as follows : On the 3d day of December, 1869, plaintiff's intestate made application to the company for a policy on his life, through B. F. Smith, and on the same day paid to Smith one hundred and thirty-three dollars and sixty-six cents in gold coin, and gave him his note for eighty-four dollars and sixty-six cents, and Smith executed and delivered to him a receipt in the following words and figures :

| " Amount | The Alabama | Premium |
| $5,000.00. | Gold Life Insurance Co., | $211.80. |
| | Mobile, Ala. | |
| C. E. Thames, | Cary W. Butt, | T. N. Fowler, |
| President. | Vice-President. | Secretary. |

" Received of George Blakely, of Boligee, county of Greene, State of Alabama, one hundred and thirty-three dollars and sixty-six cents in American gold coin, together with note for eighty-four 66-100 dollars, being the first annual premium, interest and policy fees, on an 'insurance on his life for five thousand dollars; for which an application is this day made by him to the Alabama Gold Life Insurance Company, located in the city of Mobile, Ala.   The said George Blakely shall be considered as insured from the date of this receipt, if said application shall be approved and accepted by said company, in which case a policy shall be issued to him, and this receipt surrendered; but if said application should be rejected, then the amount named and the note given shall be returned to said George Blakely, and this receipt shall become null and void.

" Dated December 3, 1869.        B. F. SMITH,
        " Gen. Agent Ala. Gold Life Ins. Co."

The agent claimed no other authority than to receive the application and premium, &c., to be forwarded to the Insurance Company.

On the sixth day of January, 1870, the draft of Blakely,

[Ala. Gold Life Ins. Co. v. Mayes.]

for the cash payment mentioned in the receipt, was paid to the company, and on the 28th day of the same month, Blakely's application was delivered by Smith to the company. Upon that day Dr. Herndon, the medical examiner of the company to whom the application had been submitted, returned it to the proper officer of the company, and directed that a friend's certificate should be obtained, and the secretary on the same day wrote to Smith, requesting that a friend's certificate be sent. On the 28th day of March, 1870, a "friend's certificate," bearing date the 18th day of that month, was sent to the company, and on the first day of April, 1870, the risk was disapproved by the medical examiner, and on the sixth of that month was acted on by the committee of the company and rejected. On the same day, Fowler, secretary of the company, notified the agent, Smith, of the rejection of the application, and on the seventh, Smith notified Johnston, the local agent at the residence of Blakely, of the rejection. On the 13th of May, 1870, Blakely died, having been sick for about six weeks, and not having notice of his rejection.

After the death of Blakely, and on or about the 25th of August, 1870, Johnston called on the appellee as the administrator of Blakely, and gave him a draft drawn by Smith & McInnis on the company for the sum of one hundred and seventeen dollars and ninety-six cents, stating at the time that the draft was for the amount of a premium paid by deceased to the Insurance Company when he made his application, and that the application had been rejected. The appellee testified that he received the draft in ignorance of the amount paid the company by Blakely, and upon the representations of Johnston that the draft was for the full amount of the premium paid, and he surrendered to Johnston the receipt given Blakely by Smith, and sent the draft to Mobile for collection, where it was paid by the company. He testified that had he been informed of the facts, he would not have received the draft or surrendered the receipt, and that he acted on the statements of Johnston. It was not shown that the note given by Blakely had ever been returned, or in any way accounted for the appellant. Appellee ascertaining the facts to be as above stated, brought suit on the receipt, as on a policy of insurance. Numerous exceptions were reserved to the ruling of the court and to charges given and refused, but in the view which the court took of the case, it is unnecessary to refer further to them. The jury, (under instructions which held the company liable, unless it

notified Blakely of the rejection of his application in a reasonable time, and returned to him the money and note, within a reasonable time, of which they were to judge,) found a verdict in favor of plaintiff for the amount of the policy and interest; and the company brings the case here by appeal.

BOYLES & OVERALL, for appellant.

R. H. & R. INGE, and G. L. SMITH, contra.

BRICKELL, C. J.—The errors assigned are numerous, relating to questions of pleading, rulings of the court below on the admission of evidence, and in giving and refusing instructions to the jury.　It is not necessary to consider them separately, for in view of the evidence, there is a radical error in many of these rulings, and the appellee who was plaintiff has no right of recovery in any aspect of the case.

In the absence of statutory prohibition a contract of insurance may be made by parol, or there may be a parol agreement to insure which a court of equity will enforce.—M. M. D. & M. Ins. Co. v. McMillan, 31 Ala. 711; Relief Fire Ins. Co. v. Shaw, 4 Otto, 574; Bliss on Life Ins. 183, § 138; May on Ins. 13, § 14.　Whether by parol, or in writing, as in all other contracts, the mutual assent of the parties to all the elements and terms of the contract, is esential to its existence. If the parties have not agreed on the subject of insurance, the limit and duration of the risk, the perils insured against, or the hazards insured, the rate of premium, and the amount to be paid in the event of a loss, or upon any other element or term which may be peculiar to the particular contract, whatever may have been the negotiations or propositions passing between them, these have not reached the form and obligation of an existing contract.

The contract of insurance may like other contracts be effected through an agent, and the existence of a contract complete in itself, often depends on the authority with which the agent is clothed.　Whatever may have been the authority of the agent with whom the negotiations in the present case were conducted, he claimed to exercise, and exercised no other power, than to receive the application of the deceased, for a policy of insurance on his life, the percentage of the premium, and fees for a policy, and note for the remainder of the premium, to be forwarded to his principal, the appellant.　If he had any other authority than to receive the ap-

plication, and the premium, forwarding the application for acceptance or rejection by the principal, it was not exercised, nor was its exercise invoked by the deceased. The existence of a larger power is not therefore a material inquiry; it could not compel him, or his principal, into a contract he never made, or intended to make.

The application for insurance, was no more than a proposition from the deceased, to the appellant, to enter into a contract of insurance. It has not in it a word proceeding from the appellant. It was the act of, and proceeded from the deceased alone, and it remained his act, a mere proposition for a contract, until the appellant assented to it, and agreed to accept the risk on the terms stated.—*Hieman v. Phœnix Mut. Ins. Co.* 17 Minn. 173; *Schwartz v. Germania Life Ins. Co.* 18 Minn. 448; *Wallingford v. Home Mut. Fire Ins. Co.* 36 Mo. 46; *Ins. Co. v. Young,* 22 Wall. 83; *Cotton States Life Ins. Co. v. Scurry,* 50 Geo. 48.

The receipt given by the agent to the deceased, at the time of receiving the application, indicates the real character of the transaction. Neither party then contemplated a contract complete in itself, or supposed there was more than a proposition for a contract. It is stated in express terms in this instrument, that the deceased has made an application for a policy of insurance on his life, for five thousand dollars, the payment of a certain part of the first annual premium, interest and policy fees, in cash, and the execution of the note of the deceased for the remainder of the premium. It is further stated, the deceased was to be considered insured from the date of the receipt, *if said application shall be approved and accepted by said company, in which case a policy shall be issued to him and this receipt surrendered; but if said application should be rejected, then the amount named, and the note given shall be returned to said George Blakely, and this receipt shall become null and void.*

The receipt discloses, as we have said, the true character of the transaction, a proposal for a contract to an agent, the agent reserving to his principal, from abundant caution, the absolute and unqualified right of acceptance or rejection. If the proposition was accepted, a policy, the highest and best evidence of the contract, was to follow the acceptance. The policy was to have relation to the date of the receipt, if the proposal was accepted, and this is the only element of contract, so far as the appellant is concerned, to be found in the transaction, and that depends upon the acceptance of the proposition. If it is not accepted, the receipt by its own

terms becomes void. As a security for the return of the money which accompanied the application, it may remain after rejection, but for no other purpose.

The fact is undisputed, that appellant did not accept, but rejected the application. It is however insisted the rejection came too late—that the appellant was bound to accept or reject the application within a reasonable time, and if rejected, notify the deceased thereof, returning the money advanced by him, and his note. The delay of the appellant then, would take the place of the *assent* which is the essential ingredient of a contract. We are not aware of any authority for the proposition, that mere delay—mere inaction, can amount to an acceptance of a proposal to enter into a contract. The opposite, is the true doctrine, that if no answer is given to a proposition for a contract, within a reasonable time, the proposition is regarded as withdrawn. The principle is stated in *Hallock v. Conn. Ins. Co.* 41 Conn. 268: "A contract arises when an overt act is done, intended to signify an acceptance of a proposition, whether such overt act comes to the knowledge of the proposer or not, and unless a proposition is withdrawn, it is considered as pending until accepted or rejected, provided the answer is given in a reasonable time."

If the appellant was dilatory in acting on the proposal, the deceased could have quickened its diligence, by demanding prompt action; or, if not assenting to the delay, he could have retracted his proposal, and reclaimed the money he had advanced and his note. He had no right, without an inquiry as to the cause, without any action on his part, to rely on the supineness of the appellant, no greater than his own, as an acceptance of the proposal.—*Ins. Co. v. Johnson*, 23 Penn. St. 72; *Bentley v. Columbia Ins. Co.* 17 N. Y. 421; Flanders on Insurance, 108.

It is also insisted, that the rejection of the application was without cause, and that though the proposition was subject to the approval of the appellant, yet the necessary implication is, that the approval would be given unless good cause existed for withholding it. There are authorities, holding, that if an agent is authorized to make contracts of insurance, and he makes a contract subject to the approval of the principal, that the principal can not without sufficient cause withhold his approval.—Flanders on Insurance, 10 7–8, citing *Ins. Co. v. Webster*, 6 Wall. 192; *Palm v. Medina Ins. Co.* 20 Ohio, 529; *Lightboy v. N. Am. Ins. Co.* 23 Wend. 18; *Perkins v. Wash. Ins. Co.* 4 Cowen, 645. A marked and

[Gill v. The State.]

distinguishing feature between those cases and the present, is, that there was no contract made by the agent, if he had authority to make any.  The only power he exercised was that of receiving the application and premium, reserving to his principal the absolute, unqualified right of rejection, and distinctly stating the consequences of rejection, that the transaction between him and the deceased should be void. This reservation was vain, if the appellant could now be required to show cause for its rejection of the application. We adopt the language of the Supreme Court of the United States, in a similar case: "It was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason; or to accept the proposition with such modifications of the term specified, and of the usual conditions of such policies, as it might see fit to prescribe.  The entire subject was both affirmatively and negatively within its choice and discretion."—*Ins. Co. v. Young, supra.*

In view of all the facts the jury should have been instructed, that the appellant had not entered into any contract of insurance, or any agreement to insure the life of deceased; that the transaction, until the proposal of the deceased was rejected, was merely preparatory to, or initiatory of a contract, and was terminated absolutely by the rejection by the appellant of the proposal, imposing no duty or obligation on the appellant, other, than on demand, to return the money paid to its agent, and the note of the deceased.—*Real Estate Ins. Co. v. Roessle,* 1 Gray, 336.

The rulings of the Circuit Court, were inconsistent with these views, and the judgment is reversed and the cause remanded.