# Wheeling.

## McCULLY'S ADM'R *v.* PHŒNIX MUTUAL LIFE INS. CO.

### Decided November 26, 1881.

1. McC. made application to T., agent of an insurance company, for an insurance on his life for $1,000.00. The application was in writing and was signed by him. At the same time he gave to T. his negotiable note for the premium at sixty days. T.'s authority was only to collect premiums and receive applications, not to contract. The application provided, that it was to form the basis of the contract of insurance, "which contract shall be completed only by delivery of policy." The application was forwarded to the home-office; and in a few days a policy was returned to the agent, which on its face provided: "This policy to take effect when countersigned by B. E. Tift, agent at Wheeling, West Virginia." The policy was never countersigned by Tift nor delivered to McC. In about a month he died. HELD:

   No contract of insurance was consummated between the parties; and McC.'s administrator could not maintain a suit against the company for the policy or its amount.

2. An application for insurance is a mere proposal, which the company can accept, reject or modify; and until the minds of the parties meet by an agreement upon all the terms, and all the conditions required are performed, no contract arises.

3. A condition, that the contract shall not take effect except upon the delivery of the policy, must be performed, before the contract is complete.

4. The condition, that the policy is to take effect only when countersigned by "B. E. Tift, agent," must be complied with, before the contract is consummated.

5. That condition is a personal trust in the agent and cannot be delegated by him to another.

6. A contract cannot bind the party proposing it, until the acceptance of the other party is in some way actually or constructively communicated to him.

Appeal from a decree of the municipal court of Wheeling rendered on the 25th day of November, 1876, in a cause in said court then pending, wherein the administrator of Alexander McCully, deceased, was plaintiff, and the Phœnix Mutual Life Insurance Company was defendant, allowed upon the petition of said plaintiff.

Hon. G. L. Cranmer, judge of the municipal court of Wheeling, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the court.

*I. S. Jones and S. O. Taylor,* for appellant, cited the following authorities: 9 How. 390; 19 How. 318; 1 Atk. 545; 4 Cow. 645; 1 Duer 66; *Id.* 110; 2 Phillips 583; 1 Dan. Chy. Pr. 612; 6 Mass. 142; 47 Barb. 127; Bliss Life Ins. 151; *Id.* 251, 252; 7 Nev. 116; 4 Big. Ins. R. 458; 31 Mo. 518; May Ins. 328; 20 Wall. 560; *Mowry* v. *Ins. Co.,* 9 R. I.; 24 Ohio St. 345; 32 Ind. 447; 25 Barb. 189; 35 N. Y. 131; 9 Bush. 430.

*W. P. Hubbard,* for appellee, cited the following authorities; 17 Minn. 153; 9 How. 390; 6 Bush. 450; 23 Pa. St. 72; 3 Neb. 206; 18 Ohio 459; 19 Ohio 452; 18 Minn. 457; 103 Mass. 244; 13 B. Mon. 400; 27 Pa. St. 270; 2 Otto 377; 23 Wall 85; 3 Conn. 357; 1 Gray 335; 4 Wheat. 225; 12 Otto 108; 22 Wall. 47; 1 Otto 510; 4 Big. Life Cas. 375, 395; *Id.* 416.

PATTON, JUDGE, announced the opinion of the Court:

Alexander McCully applied to B. E. Tift, agent in Wheeling of the Phœnix Mutual Life Insurance Company of Hartford, Connecticut, for an insurance upon his life for $1,000.00 in that company on the 17th day of August, 1874. Application was made out in due form and signed by said McCully. Said application provided amongst other things: "It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned, that this application shall form the basis of the contract of insurance, which contract shall be completed only by the delivering of the policy." At the same time McCully executed his negotiable note payable to the order of said Tift for $24.77, sixty days after date with interest, the amount of the first premium upon the anticipated policy of insurance. The authority of Tift as agent did not extend to making contracts of insurance, but only to collecting premiums, receiving applications for insurance and forwarding them to the home-office, where the applications were accepted or rejected. This application was at once forwarded to the home-office; and on the 24th day of August a policy was made out in due form and

was forwarded to the agent, Tift, in Wheeling, who received the same about the 1st of September. This policy on its face provided: "This policy to take effect when countersigned by B. E. Tift, agent at Wheeling, West Va."

This policy was never in fact countersigned by Tift or delivered to McCully, who on the 12th day of September was taken ill with typhoid fever and died on the 28th of that month. After his death his administrator brought suit in chancery in the municipal court of Wheeling to compel the surrender of said policy of insurance and the payment of the amount due thereon. The complainant in his bill says: "The plaintiff further avers and says, that the said defendant accepted the application of the said Alexander McCully and issued a policy of insurance on his life for the sum of $1,000.00 and sent the said policy so issued as aforesaid to the said B. E. Tift, agent as aforesaid in the city of Wheeling, to be delivered to the said Alexander McCully, which said policy was received by the said B. E. Tift on or about the 1st day of September, 1874." The company in its answer denies the payment of the premium, denies that the policy was sent to Tift to be delivered to McCully, and denies the countersigning of the policy by Tift, all of which it is claimed were essential to the consummation of a contract between McCully and the company.

The court below dismissed the complainant's bill; and he thereupon obtained an appeal to this Court.

There are a number of questions raised by the record in this case; but in my view it is necessary to consider only the question, whether there was a contract consummated between McCully and the company, by which it was entitled to recover the premium from him, or rather the amount of the negotiable note given to Tift, and McCully was entitled to have the policy of insurance. There are a great many cases, which show, that where there has been a contract of insurance entered into between a company and the insured, and nothing remains to be done to complete the contract, the mere fact, that the policy has not been delivered, does not affect the rights of the parties. The company is entitled to recover its premium; and the insured is entitled to his policy. *Fried* v. *Royal Insurance Co.*, 47 Barb. 127; *Tayloe* v. *Insurance Co.,*

9 How. 390; *Insurance Co.* v. *Insurance Co.*, 19 How. 318; *Perkins* v. *Insurance Co.*, 4 Cow. 645; *Cooper* v. *Insurance Co.*, 7 Nev. 116.

In *Fried* v. *The Royal Insurance Co.* the authorized agent of the company made a contract of insurance in these words: " Received from Mrs. Caroline Fried the sum of $80.25 premium on a proposal of assurance for $5,000.00 on the life of her husband, Henrich Fried, which is to be forwarded immediately to the head-office at Liverpool, England, for acceptance. If it be accepted, a policy will be issued in accordance therewith; if declined, the above mentioned premium will be returned. But in case the said Henrich Fried die before the decision of the head-office shall have been received, the sum insured will be paid in accordance with my instructions." The agreement was forwarded by the agent to the head-office at Liverpool, was accepted by said head-office, a policy of insurance in their usual form was made out duly authenticated by the head-office, made in conformity to the terms of the proposition and sent to the agent, but was never delivered to the plaintiff. It was held, that it was no part of the contract, that its binding effect and validity should depend upon any subsequent act of themselves or their agent in the actual delivery of the policy so issued to the plaintiff. The acceptance of the proposition and the premium, the making out and authenticating a policy and the transmission of it to their agent was all the legal delivery required. These acts amounted to the consummation of the contract. The minds of the parties had met.

In the case of *Tayloe* v. *Insurance Co.* it was held, that where there was a correspondence relating to the insurance of a house against fire, the insurance company making known the terms upon which they were willing to insure, the contract was complete, when the insured placed a letter in the post-office accepting the terms. The contract was complete; the minds of the parties had met. It was only necessary to pay the premium, which was done, and issue the policy, which was not done. The contract was complete, but the formal evidence of it was not exchanged between the parties. The cases cited, and many more to like effect could be produced, go to show, that there may be a valid contract of insurance between

99

the parties, whenever their minds meet previous to the mere issuing and delivering of the policy. Whenever the contract is complete, the insurer can demand and recover the premium, and the insured can recover the policy.

"Nor do we deem it essential to the existence of a binding contract to make insurance, that a premium-note should have been actually signed and delivered. The promise of the plaintiff to give a note for the premium was a sufficient consideration for the promise to make a policy. It is admitted, that the usage is to deliver the note, when the policy is handed to the assured. If the defendants had tendered the policy, we have no doubt an action for not delivering the premium-note would at once have lain against the plaintiffs; and we think there was a mutual right on their part after a tender of the note to maintain an action for non-delivery of the policy." Curtis, Justice, in *Insurance Co.* v. *Insurance Co.*, 19 How 318.

Whether a contract has been in fact made between the parties is a question of evidence. The application for insurance is a mere proposal on the part of the applicant. When the answer signifies the acceptance of it to the proposer, and not before, the minds of the parties meet, and the contract is made. If anything remains to be done to make a contract, if the agreement is not consummated, if all the terms have not been mutually agreed upon, no contract arises between the parties. *Herman* v. *The Phœnix Mutual Life Insurance Co.*, 10 Am. R. 154; *Schwartz* v. *Germania Life Insurance Co.*, 18 Minn. 448; *Herman* v. *The Phœnix Mutual Life Insurance Co.*, 17 Minn. 153.

The application being a mere proposal to the company, it can either accept the proposal, decline it altogether, or impose such conditions as to the making of the contract, as it may choose. In many of the contracts prepared by insurance companies the payment of the premium is the condition and the only condition imposed, after the application has been acted on. In others the delivery of the policy and the payment of the premium are the conditions, upon which the company agrees, that a contract shall arise. In some the requirement, that the policy shall be countersigned by the agent, is necessary; and in others still, that between the acceptance of the application and the delivery of the policy nothing has

intervened to increase the risk of the insurer. All of these conditions, whether wise or not, reasonable or unreasonable, are within the power of the insurer to impose. The insurer is not bound to accept the proposal made, and may impose such additional requirements to create the contract, as it sees fit. The applicant is not bound to accept the contract variant from this application. But their failure to agree ends the negotiation. It is only when they agree, that a contract arises; it is only when that agreement is reached, that the mutual rights of the parties against each other arise. *St. Louis Mutual Life Insurance Co.* v. *Kennedy,* 6 Bush. 450; *Herman* v. *Mutual Life Insurance Co., supra; Schwartz* v. *Germania Life Insurance Co., supra; Lynn* v. *Burgoyne,* 13 B. Mon. 400; *Badger* v. *Amer. Pop. Life Ins. Co.,* 103 Mass. 244.

When did the contract arise in this case? When did the minds of the parties meet? Certainly not when the application was signed by McCully, for that application on its face said: "The contract shall be completed only by delivery of policy." It was by its terms only a proposal to the company, which they were at liberty to accept or not. The agent avowedly had no authority to make a contract, but only to collect premiums, receive applications and forward them for the action of the home-office. A good deal has been said in argument, as to whether the negotiable note given in this case was a *payment* of the premium or not. It seems to me, that it makes no difference, whether it was so received or not. Suppose instead of giving a note McCully had paid the amount of the premium in money at the time of the application it certainly could not alter the question, as I understand it, whether at any time a contract arose between the parties, by which the company agreed to insure him, independently of whether the premium was paid. According to the authorities before cited, all the terms prescribed by the company, upon which it agreed to contract, must be fulfilled before the contract is consummated, there was no agreement, as far as I can discover, by which the payment of the premium and the signing of the application by McCully consummated a contract between the parties; on the contrary the whole negotiation between McCully and Tift, the agent, was based upon the knowledge, that

what occurred between them was a mere proposal to the company. Were they bound to accept that proposal? I think not. They could reject it in *toto*, modify their acceptance and prescribe any conditions they pleased. If the company had accepted the application, yet instructed the agent not to deliver the policy, if the party was not in good health at the time, when it would otherwise be delivered, as was the case in *Schwartz* v. *Germania Life Insurance Co. supra*, and *Insurance Co.* v. *Kennedy supra*, when would the contract arise? There was no acceptance except upon condition; and that condition must be fulfilled.

The applicant in this case agreed, that no contract should be consummated except upon delivery of the policy. This was a most important stipulation. Many troubles might arise between the application and the delivery, which would induce the company not to contract. The party's health might fail, his habits might become such as to make him an undesirable person to insure. It might be ascertained that the answers made in the application to important questions were untrue. The interval between the application and the consummation might naturally be made use of to discover those facts, which would determine the final action of the company. It seems to me therefore, that, if the policy in this case had not in fact been delivered to McCully, no contract had arisen between him and the company. The policy on its face shows, that it was not sent to the agent to be delivered absolutely to McCully, but only when countersigned by the agent. Whether this was intended as the mode of delivery, as provided for in the application, to consummate the contract, or was intended as a different condition, upon which acceptance of the proposal would be indicated, in either event the company would not be bound without the countersigning of the agent or the delivery of the policy. I see at no stage in this negotiation where the minds of the parties met and the contract was consummated.

In the case of *Barr* v. *Insurance Co. of N. A.*, 61 Ind. 488, it was held, that a company may be bound, though no policy was issued; but there must be a valid contract subsisting between the parties. A mere acceptance of the proposition by the company would not create a valid contract without a noti-

fication to the insured. In the opinion of the court we find the following: "Mr. Parsons says: 'It is unquestionably true as a general proposition, that a contract cannot bind the party proposing it, and indeed, that there is no contract, until the acceptance of the offer by the party receiving it is in some way actually or constructively communicated to the party making the offer.' 1 Parsons Con. 483; *Kennedy* v. *Lee*, 3 Meriv. 440-453."

In *Hobbs's Case*, Law Rep. 4 Eq. 9, it was held, that a proposed contract is not binding on the party, who proposes it, until its acceptance by the other party has been communicated to him or his agent. *Vide* also *Dunlop* v. *Higgins*, 1 H. L. Cases 381; *Tayloe* v. *Insurance Co.*, 9 How. 390, 402; *Trevor* v. *Wood*, 36 N. Y. 307.

There was some evidence tending to show, that the bookkeeper of Tift countersigned the policy, after it was returned from the home office, whether in his own name or in the name of Tift does not appear. This act of the book-keeper was a mere nullity. It does not appear to have been done by Tift's authority, or direction, or in his presence. But if it had been, the authority to Tift was a personal trust, which he had no right to delegate. In the case of *Lynn* v. *Burgoyne*, 13 B. Mon. 400; it was held, that "A policy of insurance is issued by a clerk of a company purporting on its face that it shall not be valid until countersigned by John Burgoyne, agent at Cincinnati, and which was never so signed, is not a valid and binding policy." In that case the book-keeper of the company, G. W. Williams, at Cincinnati, signed the name of Burgoyne by himself. It was also held: "Where a trust and confidence of a high character is given to an agent, he cannot transfer such power without express authority to do so."

In the case of *Badger* v. *Insurance Co.*, 103 Mass. 244, it was also held, that "A policy of life insurance, which provides, that it shall not be in force until countersigned by A B, agent, is invalid until so countersigned, although A B is himself the assured and the policy has been received and retained by him." In the opinion in that case it is said: "We need not enquire into the motive of the company for inserting this condition, nor into his motive for neglecting to comply

with it.   It is sufficient, that the defendant had a right to insert it and insist upon it."

In no view of this case can I see that a contract was at any time consummated between the parties.   The mere sending of the policy to the agent did not make the contract. Beyond the policy itself there was no evidence of a willingness to contract.   It is unlike those cases, where there was an antecedent complete contract, and the policy was but the mere formal expression of the previous contract, as in the case of *Fried* v. *Royal Insurance Co. supra.*   McCully had no notice actual or constructive of the acceptance of his proposal; and according to the authorities at any time before such notice, if there had been an acceptance, it could have been withdrawn. The conditions, upon which by the terms of the policy it was to take effect, were never complied with; and the negotiations between the parties were never terminated by a mutual agreement between them.

One of the defences set up by the defendant in his answer was, that McCully was addicted to the habitual use of spirituous liquors, and that the policy was void on that account.   A good deal of evidence was taken pro and con on that question.   I have not deemed it necessary to consider this or other questions raised by the record and argued at the bar; but it may be remarked, that Tift claimed in his evidence, that the reason the policy was not delivered to McCully, was because he had learned that he was a " drunken vagabond." This is at least a strong reason in illustration of the reasonableness of an insurance company providing, that the contract shall not take effect until delivery of the policy or the countersigning of the policy by the agent.

I am of opinion therefore, that the court below did not err in holding, that McCully's administrator was entitled to no relief against the company; and that the decree of the court dismissing the bill should be affirmed with costs, and thirty dollars damages.

The decree of the municipal court should have provided, that the negotiable note executed by McCully to Tift should be surrendered to the complainant in the bill, but as that note was filed with the answer of the company for the purpose of

being delivered up and thus came into the possession of the court, it is not considered necessary to reverse or correct the decree for that cause.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.