296 So.2d 896

**LIFE INSURANCE COMPANY OF GEORGIA, a corporation**

v.

**Lana McCullers MILLER.**

**Civ. 51.**

Court of Civil Appeals of Alabama.

Feb. 14, 1973.

Rehearing Denied April 18, 1973.

Spain, Gillon, Riley, Tate, Ansley and Ollie L. Blan, Jr., Birmingham, for appellant.

E. L. Brobston and Lee Bains, Bessemer, for appellee.

BRADLEY, Judge.

This is an appeal from a judgment rendered by the Circuit Court of Jefferson County, Bessemer Division, in favor of appellee-plaintiff for $5,000.00.

Appellee filed an action against the appellant seeking recovery on a policy of insurance. In answer to it, appellant filed pleas of non est factum and the general issue in short by consent, etc. Trial was held before the court sitting without a jury. After judgment appellant gave notice of appeal to this court.

The facts show that Jack L. Miller, deceased husband of the appellee, made application for an insurance policy with appellant on March 21, 1969. The policy applied for was on the life of Miller in the amount of $5,000.00. In support of the application, the first month's premium of $6.-05 was paid to the agent of appellant and this amount was the standard rate for the policy to be issued.

Mr. Miller was asked to take a physical examination and after missing several appointments did comply with the request.

On May 9, 1969 a policy of insurance was issued by the appellant to Jack L. Miller for the plan and amount applied for, but at an increased premium rate, and placed in the U. S. Post Office in Atlanta, Georgia on the same date.

The policy was received in the district office of appellant in Bessemer, Alabama on Monday, May 12, 1969. On Sunday, May 11, 1969, Jack L. Miller was killed as a result of an automobile collision. The policy was, on May 12, 1969, returned to the home office in Atlanta because of the death of Mr. Miller.

A day or two after the return of the policy to the home office, a check for $6.05 was given to appellee's father for delivery to her as a refund of the first month's premium paid by Mr. Miller when he applied for a policy of insurance. The check was not cashed by appellee but was turned over to her lawyer.

The agent for appellant who obtained the application for insurance from Mr. Miller stated that the policy received by the district office on the life of Mr. Miller was a rated-up policy and they did not have an opportunity to deliver this policy to Mr. Miller and explain to him that it was a rated-up policy and that the premium would be more than the $6.05 previously paid by him.

The agent stated that his procedure in the case of a rated-up policy would be to explain the differences in the policy issued and the one applied for, and then ask the applicant if he wished to purchase the rated-up policy, and in the event he did, to collect the additional premium, if any was due, and then leave the rated-up policy. If the applicant did not want the rated-up policy, it would be considered rejected and the rated-up policy would be returned to the home office. The premium previously paid would be refunded.

Mr. Elmer Thomas, the chief underwriter for appellant, stated that Mr. Miller's application for insurance was investigated, and because of a report that he had a reputation of having been a reckless and speedy driver, his insurance was uprated by $3.50 per thousand, which is an additional amount over and above the standard rate.

When the policy was issued there was an error in the amount of premium that was charged. It was provided in the policy that the monthly premium would be $6.25 per month; however, it also appeared that a policy rating notice accompanied the policy to the district office and that notice re-

flected that the policy had been uprated by $3.50 per thousand. The testimony was that this error in the premium amount would have been corrected prior to delivery to Mr. Miller had he been alive.

The primary issue for this court to decide is whether or not appellant had issued a policy of insurance on the life of Jack L. Miller prior to his death on May 11, 1969, which was in effect on said date.

The evidence is undisputed that Jack L. Miller applied to an agent of appellant for a $5,000.00 life insurance policy on March 21, 1969 and on that same day paid the first month's premium for such a policy in the amount of $6.05, which was the standard rate for such a policy. It is also undisputed that the appellant issued a $5,000.-00 life insurance policy to Jack L. Miller but for an increased premium, i. e., $6.25; although the evidence showed the stated premium was in error and an up-rating notice was mailed with the policy.

Appellant argues that it rejected the application of Jack L. Miller for a $5,000.00 life insurance policy at the standard rate of $6.05 per month, but made a counter offer to insure Miller for $5,000.00 on his life for an up-rated premium of $3.50 per thousand. And, since Mr. Miller died before he could accept this counter offer by paying the extra premium, there was no insurance in effect at the time of Mr. Miller's death.

Appellee counters by saying that Jack L. Miller did everything that was required of him by appellant, i. e., he took and passed the physical examination and also furnished satisfactory proof of his draft status. Furthermore, he argues, there was no justification for uprating the premium on the policy because of Mr. Miller's past driving habits. The reason given by the underwriter was that a retail credit report revealed that Mr. Miller was a reckless and speedy driver although he had not been involved in any accidents nor had he been guilty of any moving traffic violations.

Appellant contends that the rules followed by the underwriter in uprating Mr. Miller's policy do not authorize such a determination and that the rules in question are mandatory and must be followed. However, the underwriter testified that the rules were a mere guideline to be used in approving or disapproving applications for insurance. We agree with the underwriter. We believe that the language used in the so-called rule is much more conducive to an interpretation that is a mere guideline rather than a strict rule of policy that must be followed to the letter.

■ Alabama appellate courts have not, so far as we have been able to determine, been confronted with a construction of an uprated policy of insurance. However, the principle has been adopted in Alabama that an application for insurance is a mere proposal by the applicant for insurance, and such proposal must be accepted by the insurer for there to be a meeting of the minds and thereby a resulting contract. Until there is an acceptance of the proposal as made, there is no contract of insurance. Alabama Gold Life Ins. Co. v. Mayes, 61 Ala. 163; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; and United Ins. Co. of America v. Headrick, 275 Ala. 594, 157 So.2d 19.

■ The proposal for insurance made by Mr. Miller to appellant was that he wanted to be insured for $5,000.00 at the premium rate of $6.05 per month, but the response made by the insurer to this proposal was different than the original proposal, i. e., the insurer proposed to insure Mr. Miller for $5,000.00 but at an increased rate of premium, $6.25 per month; and applying the Alabama rule to these facts, there was no acceptance by the appellant of applicant's offer to purchase insurance in the amount of $5,000.00 and at the standard rate of $6.05 per month.

Appellant further argues that the policy issued by it on May 9, 1969 to Jack L. Miller was not only a rejection of the offer for insurance made by Miller, but also

a mere counter proposal to insure which required acceptance by Jack L. Miller in order for it to become a completed contract. Death intervened to prevent acceptance; hence no consummated contract of insurance.

In the case of McLean v. Life of Virginia, 11 N.C.App. 87, 180 S.E.2d 431, the Court of Appeals of North Carolina, in a case where there had been an application for a $5,000.00 life insurance policy and payment of the $15.70 premium; where a medical examination was required, and based on the results of this examination the insurer determined to insure the applicant for the amount of insurance applied for, i. e., $5,000.00, but at an increased premium, i. e., $17.60, and where the policy was never delivered because of the intervening death of the applicant, said:

"All of the evidence in this case indicates that the application which plaintiff and her husband made for an insurance policy to be issued at standard premium rates was not accepted by the defendant insurance company because it determined on the basis of information contained in the medical examination of Charles N. McLean, one of the proposed insureds, that he was not insurable at the premium rate applied for in accordance with its rules, limits and standards for the policy applied for. There was no evidence that in making this determination the insurance company acted unreasonably, arbitrarily, or in bad faith. There is no dispute but that the medical examination, which was made for the insurance company by the proposed insured's own personal physician, correctly revealed that the proposed insured had been hospitalized within the year for treatment of a peptic ulcer. The defendant presented uncontradicted evidence in the testimony of an Assistant Manager of its Underwriting Department and from the pertinent page of its Underwriting Manual which established the rating applicable for an individual 45 years of age, as was

Charles McLean, who is shown to have had peptic ulcer hospitalization within one year of the application. . . .

"It was an express condition of the advance payment receipt that the proposed insured be insurable *at the premium rate applied for* if the insurance was to take effect on the date the application, including the required medical examination, was completed. All of the evidence shows that Charles N. McLean was not insurable at the premium rate applied for. Accordingly, this condition precedent was not complied with. The subsequent issuance of a policy calling for a higher than standard premium constituted, in effect, a rejection of the offer contained in the application and a counter offer by the insurance company. [Citation omitted.] Because of Charles McLean's death, the counter offer could not be accepted by him. Thus, all of the evidence in this case established that no contract of insurance became effective during the life of Charles N. McLean. [Citations omitted.]"

The cases of Novellino v. Life Insurance Co. of North America, Del., 216 A.2d 420; National Life & Accident Ins. Co. v. Carmichael, 53 Tenn.App. 280, 381 S.W.2d 925; and Sasser v. Coastal States Life Ins. Co., 113 Ga.App. 17, 147 S.E.2d 5, support the proposition that the issuance of a policy of insurance at a greater rate of premium than the standard rate applied for constitutes a rejection of the application for insurance at the standard rate and a counter offer to insure for an additional premium rate; and, where the counter offer is not accepted prior to the death of the proposed insured, there is no contract of insurance in effect at the time of death for which the insurer could be held liable.

The application signed by Miller and forwarded to the appellant provided that no insurance would take effect unless a policy was issued to and accepted by applicant and the first full premium stated in the policy issued is paid, all while the

**6**

applicant is in sound health. Also, one of the conditions of the receipt issued to applicant upon the payment of the standard premium of $6.05 was that the applicant be insurable at the premium rate applied for on the date of the completion of the application.

The undisputed evidence shows that the application for insurance was at the standard rate, whereas the policy issued contained a premium at an increased rate. The evidence also shows without dispute that the applicant was not insurable at the premium rate for which he had applied. Therefore the condition set out in the receipt was not met.

We conclude, therefore, that there was no acceptance by the appellant of the proposal made to it by Jack L. Miller to insure his life for $5,000.00 at the standard premium rate of $6.05 per month. We further conclude that the policy issued by appellant and placed in the U. S. Post Office in Atlanta, Georgia on May 9, 1969 was nothing more than a counter offer by said appellant to insure the life of Jack L. Miller for $5,000.00 at an additional premium rate. And, inasmuch as Jack L. Miller died before this policy was accepted or rejected by him, this counter offer by the appellant-insurer never ripened into a binding contract; consequently there was no contract of insurance in effect on the day of Jack L. Miller's death for which appellant could be held liable.

It follows that the trial court misapplied the law to the facts and erroneously found for the appellee. Hence the judgment of the trial court is reversed and one here entered in favor of the appellant.

Reversed and rendered.

WRIGHT, P. J., and HOLMES, J., concur.