# MOBILE MARINE DOCK AND MUTUAL INS. CO. vs. McMILLAN & SON.

[ACTION ON AGREEMENT FOR INSURANCE, AND MARINE POLICY OF INSURANCE.]

1. *Validity of parol agreement of insurance.*—Neither the common law, nor any statutory provision of force in this State, requires that an agreement to insure against loss on goods by fire, between two specified points, should be reduced to writing.

2. *Validity of divisible contract partly invalid.*—A verbal agreement to insure goods, not only against loss by fire, but against other risks or perils which are within the statute of frauds, is valid as to the former provision, although it may be void as to the latter.

3. *Action lies on parol agreement to insure.*—A party having an insurable interest in goods, and having made a verbal agreement with another for insurance on them against loss by fire, may, after a loss has occurred, maintain an action at law on the agreement.

4. *Sufficiency of complaint.*—In declaring on a parol agreement to insure goods against loss by fire and other perils, it is not necessary to state in the complaint all the specified perils, when the single peril by which a loss was caused is sufficiently set forth.

5. *Admissibility of parol evidence in aid of written memorandum.*—Where a written memorandum, which does not amount to a contract, is drawn up after the conclusion of a valid parol contract, parol evidence is admissible in aid of it; and the oral evidence and memorandum may be concurrently admitted to prove the terms of the contract.

6. *Opinion of witness as to meaning of term in contract.*—Except in matters of science and skill, and some other special cases resting on peculiar circumstances, a witness cannot be allowed to testify to the meaning of a word or term used in a contract.

7. *Admissibility of evidence to show intention of parties to contract.*—Where the terms of a parol agreement to insure goods are in issue as to the point at which the risk was to terminate, the agent of the insurance company, by whom the contract with the assured was made, cannot be allowed to testify that, if the question had been asked at the time the contract was made, he would have charged a higher premium to cover risk on the goods to the point for which the assured contends.

8. *Relevancy of evidence affecting contract of insurance.*—In an action on a parol agreement to insure cotton shipped from Mobile to New Orleans, the terms of the contract being in issue, the plaintiff may adduce evidence of the business in which he was engaged; but the fact that the consignees had a general policy which would cover the cotton from the time of its reaching New Orleans, is irrelevant and inadmissible.

9. *Construction of contract of insurance as to commencement and termination of risk.* Under a contract for insurance on cotton from Mobile to New Orleans by a specified steamboat, the risk commences when the goods are put on board

of the boat, and continues until they reach the usual place in New Orleans for the delivery of goods in that course of trade; unless it is shown that, according to the custom and usage of underwriters and persons engaged in the insurance business at the place where the contract was made, the word "New Orleans," as used in such contract, meant, and was intended to mean, the usual place of unloading the boat in the course of that trade.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THIS action was brought by the appellees, to recover damages for the loss of 134 bales of cotton, part of 198 bales, shipped by them from Mobile to New Orleans per steamboat Helen, consigned to Rugely, Blair & Co., and destroyed by fire while on the wharf at the lake end of the Jefferson and Pontchartrain railroad about eight miles from the city of New Orleans. It is the same case which is reported in 27 Ala. 77.

The complaint was as follows:

"The plaintiffs claim of the defendant, a corporation doing business in Mobile, the sum of $6,700, the agreed value of 134 bales of cotton, a portion of 198 bales, which said defendant, on the 26th January, 1854, agreed to insure against loss by fire, among other perils, from Mobile to New Orleans, at the agreed value of $9,900, and for the consideration of three-sixteenths of one per cent., which was paid by plaintiffs to defendant; which 134 bales of cotton were wholly lost and destroyed by fire before they reached New Orleans, and on their transit from Mobile to New Orleans; of which defendant has had notice.

"The plaintiffs claim, also, the further sum of $6,700, the value of 134 bales of cotton, which the defendant, on the 26th January, 1854, agreed and undertook, for the consideration of three-sixteenths of one per cent., which the plaintiffs paid to the defendant, to insure against loss and injury by fire, among other perils, from Mobile to New Orleans. The plaintiffs allege, that the defendant, on said 26th January, 1854, agreed and undertook to insure against fire, among other perils, 198 bales of cotton, at the agreed value of $9,900; that said cotton was ship-

ped on board the steamboat *Helen*, a good and sufficient boat, to be transported from Mobile to the terminus of the Carrollton and Jefferson railroad at Lake Pontchartrain, and thence by said railroad to New Orleans,—such being the usual and ordinary mode and route of shipment and transportation from Mobile to the city of New Orleans; that the steamer *Helen* safely arrived at the wharf at Lake Pontchartrain, and had thrown off upon the wharf 134 bales of cotton, so agreed and undertaken to be insured, when the steamer *Georgia*, arriving at said wharf, took fire, which fire consumed said 134 bales of cotton so thrown off on the wharf; so that the said plaintiffs in fact say, that said 134 bales of cotton, so agreed and undertaken by the defendant to be insured, of the value of $6,700 as aforesaid, was destroyed by fire before it reached New Orleans, and while on transit in the usual and customary route for the conveyance of goods from Mobile to New Orleans, to-wit, on the 28th January, 1854; of which the defendant has had notice.

"The plaintiffs also claim of the defendant $6,700, the value of 134 bales of cotton, which said defendant, on the 26th January, 1854, insured against fire, among other perils, from Mobile to New Orleans; which said 134 [bales of cotton] were sent forward in the usual and customary mode of shipment and conveyance from Mobile to New Orleans; which said cotton was wholly consumed by fire before it reached New Orleans; of which said defendant has had notice.

"The plaintiffs claim of the defendant, also, the further sum of $6,700, the value of 134 bales of cotton, a portion of 198 bales, which said defendant, for the consideration of three-sixteenths of one per cent., paid by plaintiffs to defendant, agreed, on the 26th January, 1854, that he would insure against fire, among other perils, at the agreed value of $9,900, from Mobile to New Orleans; which said cotton being sent forward in the usual mode of conveyance and transportation from Mobile to New Orleans, the said 134 bales, a portion thereof, were consumed by fire upon their transit from Mobile to New Orleans, and before they reached New Orleans; and said defendant,

46

being requested, refused, and still refuses, to issue said policy of insurance, in accordance with said agreement; whereby said defendant, under and by virtue of said agreement, is liable to pay plaintiffs said sum of $6,700."

The defendant demurred to the 1st, 2d, and 4th counts of this complaint, on the following specified grounds: "1st, because the same does not show that any insurance was ever made by defendant; 2d, because an action at law cannot be maintained on an agreement to insure merely; and, 3d, because an action at law will not lie on an agreement to insure, in the form stated, and upon the allegations made." The court below overruled the demurrer.

On the trial, as appears from the bill of exceptions, the plaintiffs first offered in evidence a memorandum in the handwriting of J. S. Secor, the defendant's secretary, which was as follows:

"5250,......7 d'ys.........1-8........6 56
4650,......2 " ........1-20.........2 32

9900, 3-16, to N. O..................18 56–$27 44"

The defendants objected to the admission of this memorandum, but the court admitted it, "on the plaintiffs proposing to show, by it and parol evidence, a special contract of insurance from Mobile to the city of New Orleans." The plaintiffs then proved by one Murray, who was present at an interview between said secretary and one of the plaintiffs a few days after the loss of the cotton sued for, that said plaintiff handed to the secretary a receipt for the cotton, to be signed by the latter, and paid him the money therein mentioned as the premium of insurance; "that the secretary declined to sign said receipt, but offered to fill up a policy of insurance, which plaintiff refused to accept; that plaintiff then asked said secretary, if the defendant had not insured the cotton in the warehouse for seven days, and on the dray to the wharf, and the 198 bales to New Orleans; and that the secretary replied, 'yes." The receipt mentioned by the witness was in these words: "Received, Mobile, February 13th, 1854, from McMillan & Son, $27 44, the premium

on insurance by this office of 198 bales of cotton, valued
at $50 per bale, and insured thus: seven days in the ship-
pers' press at Mobile, at 1-8 premium, on 105 bales; two
days in the different presses in Mobile, at 1-20, on 93 bales;
and from Mobile to New Orleans, at 3-16 premium, on 198
bales cotton, and against all losses, perils, and misfor-
tunes." The defendant's secretary testified, " that such
a memorandum, according to the usage and custom in
Mobile, if handed by the secretary of an insurance com-
pany to an *insurer*, would indicate that the contract had
been entered on the books of the company, as an insur-
ance to the city of New Orleans; and that the companies
would so pay the losses." " The defendant then renewed
the objection to the admission of said memorandum, and
also objected to the testimony of this witness; and moved
the court to exclude the whole of said evidence from the
jury, on the ground that the same was illegal, and that it
was not competent by parol evidence to establish a con-
tract of insurance against defendant, but that said contract
must be evidenced by an instrument in writing." The
court overruled the objection, and the defendant excepted.

Said Secor, who was shown to be the defendant's secre-
tary and general agent in making contracts of insurance,
was introduced as a witness by the defendant, and testi-
fied, that the plaintiffs were in the habit of insuring with
the defendant, and, at the time of the loss here in contro
versy, as well as for several years previously, had an open
policy with defendant; that the plaintiffs made applica-
tion to him, for the insurance of this cotton, verbally,
and in the usual manner, without mention of any special
risk; and that he thereupon made an entry on the defend-
ant's books, in these words: "Friday, January 27th, 1854,
McMillan & Son, *Helen*, to New Orleans, 198 B. cotton,
9,900, 3-16, 18.56;" and that he would have endorsed this
entry on the plaintiffs' policy, if the same had been handed
to him. The defendant asked this witness, " what he
meant by the word 'New Orleans,' as it stood in the said
entry." The plaintiffs objected to this question, and the
court would not let it be put; to which the defendant
excepted. The defendant also proposed to ask this wit-

ness, "whether or not he would, as such agent, have charged an additional rate of premium to cover the cotton to the city, over and above what was charged, if the question had been put to him at the time." The court would not let this question be asked, and the defendant excepted.

The plaintiffs were allowed to prove, against the defendant's objection, "that Rugely, Blair & Co., the consignees of the cotton in New Orleans, had a general policy of insurance that would have covered this cotton from the time of its reaching the city of New Orleans, although they did not offer to prove that the defendant knew of the existence of this policy;" to which ruling of the court the defendant excepted.

The court also allowed the plaintiffs to prove, "that they were in the grocery and western-produce business." The defendant objected to this evidence, on the ground of irrelevancy, and excepted to the overruling of the objection.

The evidence set out in the bill of exceptions, relative to the meaning which, by custom and usage, was attached to the words "port of New Orleans," when used in a policy of insurance, requires no special notice.

The court charged the jury as follows: "The plaintiffs claim to recover of the defendant as insurer of certain cotton which they shipped to the city of New Orleans. The plaintiffs allege, that there was a special contract of insurance by a certain steamboat; while the defendant, on the other hand, insists that it was an insurance under the open policy book, which is in evidence before you; and that, under the contract, no loss for which it is liable has occurred. The circumstances are very fully before you, from which it appears that there was certain cotton insured in warehouse in Mobile, then on the steamboat *Helen;* and that after it reached the wharf at Lake Pontchartrain, and while the steamboat *Helen* was discharging cotton, the steamboat *Georgia* came up on fire, and some of the said cotton was burnt. The first question is, what were the precise facts; and as to this, it is for you only to determine. Then, what was the contract? was it to

insure to the city of New Orleans? If so, then the
defendant is liable. If there was not a special contract,
was the open policy the contract? If you believe it was,
and that, according to the understanding and usage, the
port of New Orleans is at the city end of the railroad,
then the plaintiffs are entitled to recover; but, if you
believe that, according to the custom and usage, the port
of New Orleans was at the lake end of the railroad, then,
if the cotton was safely landed, the defendant is not liable.
The mere fact of cotton being thrown out does not make
a safe landing: the connection of the hands and officers
of the steamboat, so far as the landing it from the boat,
must have ceased. It is necessary that the landing should
be made at the usual place, and in the usual manner. If
you believe it was so made, this relieves the defendant;
but mere throwing out the cotton, as (for instance) where
water would wet it, or where it would be in peril, does
not make a safe landing. Much has been said in the case
about custom. Custom, or usage, cannot vary the law,
but may be referred to to ascertain the meaning and
intention of parties engaged in the business in which the
custom is shown to exist. The usage and understanding
must be of such a general and uniform character, that all
persons engaged in the particular business either do or
ought to know of its existence, to make it a custom.
Sometimes there may be negative evidence tending to
establish a custom. It is insisted, that it is at least doubt-
ful whether the particular risk over the railroad has ever
been in terms specified before this loss occurred. If it
was the uniform usage and understanding among persons
engaged in the business to treat the risk over the railroad
as covered by the usual policies, that would be strong
evidence of what was considered and meant in a policy
by the term 'to the port of New Orleans.' If, however,
you believe that it was mere indifference or carelessness,
it would be but a small circumstance. The definition of
the term 'port,' is a matter of mercantile understanding.
It is for you to determine what is the mercantile sense of
the term, 'port of New Orleans.' If you believe the
contract is under the open policy, and no custom or

understanding is shown, the defendant is entitled to recover."

The defendant excepted to this charge, and then asked the court to instruct the jury as follows :

"1. That even if plaintiffs had made a special contract, by which defendant agreed to cover the cotton by insurance on the wharf and railroad until it reached New Orleans, it would be necessary for them to show that they were the owners, or interested in the cotton, and the nature and extent of that interest.

"2. That even if the contract had been simply for insurance from Mobile to New Orleans by the steamboat *Helen*, the law applicable to the case in that event would be, that the insurance was upon the goods shipped on board of the boat until safely landed at the usual place of unloading in the course of that trade.

"3. That if the jury believed that the insurance was effected without any special agreement at the time, the risk would be extended no further than was usual with the company : that to ascertain the risk taken, the usual policy of the company is to be looked to.

"4. That the jury, in order to ascertain what was the contract agreed upon, are to look at all the evidence before them on the subject; and if they believe from the evidence that the contract was such as was at the time expected or intended to be endorsed on the plaintiffs' open policy, then both parties are bound by it as an agreement to enter the contract on the policy."

The court gave the last two charges asked, but refused to give the second, and also refused to give the first except with this qualification: "But the fact of the plaintiffs' having possession of the cotton, at the time of making such a contract with the defendant, would be sufficient to entitle them to recover in this action :" and to the refusal of these charges the defendant excepted.

The court further charged the jury, at the request of the plaintiffs, " that when the terms of an insurance are agreed on, and entered by the company on its books, and a loss occurs before the actual execution of a policy, such entry is evidence against the company of the terms of

the contract;" to which charge, also, the defendant excepted.

The overruling of the demurrer to the complaint, the rulings of the court on the evidence, the charges given to the jury, and the refusal of the several charges asked, are now assigned as error.

P. HAMILTON, for appellant.

R. H. SMITH, contra.

RICE, C. J.—Conceding that many commercial codes expressly require the contract of insurance to be in writing, it is certain that the common law makes no such requisition.—1 Phillips on Ins. 8; 1 Duer on Ins. 60. It is also certain, that there is no statutory provision of force in this State, which requires an agreement entered into in this State, to insure against loss by fire, to be reduced to writing.   In the absence of any such statutory provision, the question whether such an agreement is valid must be determined by the common law.—The State v. Cawood, 2 Stew. R. 360; Pierson v. State, 12 Ala. R. 149; Harkness v. Sears, 26 Ala. R. 493; Van Ness v. Packard, 2 Peters, 137; Sandford v. The Trust Fire Ins. Co., 11 Paige, 547; Manuscript Opinion of Curtis, J., in The Union Mutual Ins. Co. v. The Commercial Mutual Insurance Co., decided in the Federal court for Massachusetts.   That law does not require it to be in writing. It amounts to nothing to say that, by the law merchant, the insurance must be effected by a written instrument, called a policy; for, (as is well said by Judge Curtis in his opinion above cited,) by the law merchant, a foreign bill of exchange must be in writing; yet there can be no doubt, that an action will lie on an oral promise, for a valuable consideration, to deliver one in payment for money lent.   So a bond must be in writing, and under seal; yet a contract to deliver a bond is not required by the common law to be in writing.   So a verbal promise to convey a specified tract of land, is a promise to perform what can only be done by a written instrument; yet such a promise, if made for valuable consideration, was bind-

ing under the common law; and before the statute of frauds, its performance would have been enforced, or its non-performance redressed.—Thompson v. Thompson, 4 B. Monroe, 504; Gilmore v. Shuter, 2 Mod. 310, cited with approbation in Hoffman v. Hoffman, 26 Ala. R. 535; Donaldson's Adm'r v. Rogers' Adm'r, 30 Ala. R. 175; Bixley v. The Franklin Ins. Co., 8 Pick. R. 86; Tayloe v. Merch. Fire Ins. Co., 9 How. (U. S.) 405.

Our opinion is, that an oral agreement, upon sufficient consideration, for insurance against loss on goods *by fire*, between two local points specified in the agreement as the limits or *termini* of the risk, entered into in this State, between a party having an insurable interest in them and another, is valid.—Hamilton v. Lycoming Mutual Ins. Co., 5 Penn. State R. (by Barr,) 339; Lightbody v. North Am. Ins. Co., 23 Wend. R. 18; 1 Phil. on Ins. 8 to 13; 1 Duer on Ins. 60. The reason given by English judges, why such an agreement is not valid in England, is, that by their stamp act it is unavailable as a contract without a stamp. That reason shows that it ought to be held valid here, where we have no such act.—1 Arnould on Ins. 49, 50; 1 Phil. on Ins. 11; Mead v. Davidson, 3 Adolph. & Ellis, 303; Marsden v. East, 3 East, 572.

2. We are also of opinion, that an oral agreement, upon sufficient consideration, for insurance against loss on goods *by fire*, and also against loss on them by perils or risks coming within the provisions of our statute of frauds, between two local points specified in the agreement as *the termini* of the risk, entered into in this State, between a party having an insurable interest in them and another, is valid so far as it relates to the loss *by fire*. Such a contract is divisible. A promise to indemnify against loss by fire is separable from a promise to indemnify against loss by the default or miscarriage of another. There is nothing illegal in the consideration, and nothing illegal in any of the promises ; and, therefore, although the promises to indemnify against loss by the default or miscarriage of another may be void, their invalidity does not taint or affect the promise to indemnify against loss by fire.—Chitty on Con. 573, 597; Addison on Con. 147.

3. As such an agreement is valid, it clearly confers on the party having an insurable interest in the goods *a legal right;* ahd the legal right derived from it may, *after the loss by fire has occurred,* be asserted and enforced by an action at law.—See 23 Wend. R. 18, *supra;* 5 Penn. State Rep. (by Barr,) 339, *supra;* Tayloe v. Merch. Fire Ins. Co., 9 How. Rep. 405.

4. In declaring on such agreement, it is not necessary to state or enumerate all the perils embraced by the agreement, when the complaint shows that the loss is plainly attributable to only one of those perils, and sufficiently sets forth that peril.—Cotterill v. Cuff, 4 Taunton, 286; 2 Chitty's Pl. (ed. of 1844,) 179, note (y.)

Upon the principles above stated, we hold, that there was no error in overruling the demurrers to the first, second, and fourth counts of the complaint.

There is nothing in the record, which makes it necessary for us now to decide, whether any of the perils embraced by the agreement of the parties comes within the provisions of our statute of frauds; and we therefore leave that question open.—See Smith on Con. (56 Law Library,) 48; Eastwood v. Kenyon, 11 Adolph. & Ellis, 438; Hargreaves v. Parsons, 13 Mees. & Welsby, 561; Johnson v. Gilbert, 4 Hill (N. Y.) Rep. 178; Draughan v. Bunting, 9 Iredell, 10.

5. Oral evidence, in aid of insufficient written evidence of a contract, is certainly admissible, when the contract is not by any statute required to be in writing. A writing drawn up after a contract is concluded by parol, which is meant merely as a memorandum of the transaction, and which does not amount to a contract, may be given in evidence, concurrently with oral proof of the additional facts and circumstances necessary to constitute a contract and give effect to the transaction.—Addison on Con. 843, 1071–73; McCotter v. Hooker, 4 Selden's Rep. 497; Allen v. Pink, 4 Mees. & Welsby, 140; Eden v. Blake, 13 *ib.* 614; Renter v. Electric Telegraph Co., 6 Ell. & Bl. 341; S. C., American Law Register, for July, 1857, p. 566; Humphrey v. Dale, in the Court of Queen's Bench, Jan'y, 1857, reported in American Law Register, for July, 1857, p. 551, and in

26 L. J. Rep. 137, Q. B.; Lockhard v. Avery, 8 Ala. 503; Sanders v. Stokes, at January term, 1857, of this court; Twidy v. Saunderson, 9 Iredell, 5.

6. Except in matters of science and skill, and some other special cases resting upon peculiar circumstances, the understanding and opinion of a witness is not to be received as evidence. In cases not falling within the exceptions, he cannot be allowed to testify to the import of a word used in a contract. If he could, a party might be rendered accountable for the misunderstanding of the witness, contrary to the legal obligation of the contract; and the right to construe the words of the contract would be taken away from the court and the jury, and conferred upon the witness.—Gibson v. Williams, 4 Wendell, 320; Robinson v. Drummond, 24 Ala. R. 174; Whetstone v. The Bank at Montgomery, 9 ib. 875.

7. "A contract which the parties intended to make, but did not make, cannot be set up in the place of the one which they did make, but did not intend to make." 2 Parsons on Con. 9; Sanford v. Howard, 29 Ala. R. 684. If the insurance company, by its general agent, made a contract to insure the plaintiff's cotton to the city of New Orleans, for a certain specified premium, the contract cannot be impaired or affected by the testimony of the agent, to the effect that *he would, as such agent, have charged* on additional rate of premium to cover the cotton to the city, *if the question had been put to him* at the time the contract was made. Such testimony tends to show what influence the particular question, if it had been put, would have had upon the agent. But it is wholly immaterial in this case, how the agent would have been influenced by the question, which it is conceded on all hands was not put to him. "Such evidence leads to nothing satisfactory, and ought, on that ground, (if on no other,) to be rejected." The material inquiry in this case seems to be, not what the agent would have done if a certain question, which was not put, had been put; but what contract, if any, the agent did actually make with the plaintiff. Campbell v. Rickards, 5 Barn. & Ad. 840, and authorities cited *supra*.

8. The evidence that the plaintiffs were in the grocery and western-produce business, was admissible.—Melhuish v. Collier, 15 Ad. & Ellis, N. S. 878; Rutherford v. McIvor, 21 Ala. R. 750; Watkins v. Gaston, 17 *ib.* 662; Mobley v. Bilberry, *ib.* 428; Havis v. Taylor, 13 *ib.* 324. But a majority of the court think, there was error in allowing the plaintiffs to prove that Rugely, Blair & Co., the persons to whom the plaintiffs had consigned their cotton in New Orleans, had a general policy, which would cover the cotton from the time of its reaching that city.

As that error must work a reversal, we will merely say that it is the only error we find in the record, and proceed to lay down one proposition which may be necessary to guide the court below on another trial. It is this: If the contract was simply for insurance from Mobile to New Orleans by the steamboat *Helen*, the law applicable to the case in that event is, that the risk commenced when the goods were put on board the boat, and continued until they reached the usual place in New Orleans for delivering them in the course of that trade; unless it is proved that, according to the custom and usage of underwriters and persons concerned in the insurance business at the place where the contract was made, at the time it was made, the word New Orleans, when used in such a contract, was understood to mean, and did mean, the usual place of unloading the boat in the cause of that trade.—See Smith & Holt v. The Mobile Nav. and Mut. Ins. Co., at January term, 1857, and the authorities here cited for appellees.—1 J. Duer, 185; Parr v. Anderson, 6 East, 207; Mallan v. May, 13 M. & W. 511; see also the notes to Wigglesworth v. Dallison, 1 Smith's Leading Cases, 677–681; Smith's Mercantile Law, 325.

For the single error above pointed out, the judgment must be reversed, and the cause remanded.