# Home Insurance Co. *v.* Adler.

*Action on Policy of Fire Insurance.*

1. *Fire insurance; validity of parol contract of.*—A valid contract of fire insurance may be made in parol; and an action at law may be maintained on an agreement to insure, if all the terms were agreed on, so as to cover the *time* of the loss, and the breach consists in the failure to issue the policy.

2. *Same; when agreement to insure void for uncertainty.*—A parol agreement to insure against loss by fire, which fixes the subject and sum of insurance, but is silent as to the rate of insurance, the duration of the policy, the payment of the premium or other material stipulations, is, by

[Home Insurance Co. v. Adler.]

itself and unaided by previous dealings between the parties, void for uncertainty.

3. *Same; when verbal agreement to insure aided by previous policies.* But where the agreement relates to insurance on merchandise and household goods in the storehouse of the party seeking the insurance, and he had previously obtained two annual policies on merchandise in the same storehouse, from the same agent, and in the same insurance company, as these former dealings between the parties showed the house in which the merchandise covered by the policies was kept, the rate of premium, the time for which the insurance had been obtained, and the many stipulations and details embodied in the policies, proof thereof would authorize the inference, that when the insurance was applied for, and the agent agreed to issue the policy, all the previous terms were impliedly understood and adopted, except in so far as they were modified by the express terms of the verbal agreement; and hence, in a suit on the agreement to insure, after a loss by fire, the two former policies are admissible in evidence in aid of the agreement.

4. *Secondary evidence of contents of policy of insurance; recollection can not be refreshed by policy previously issued.*—Plaintiff declared on a verbal agreement to insure merchandise and household goods against loss by fire, and also on policy filled up and signed in pursuance of the verbal agreement, but after the loss and in ignorance of it, which was put by the defendant's agent in his safe, in which he had kept policies issued by defendant to the plaintiff for previous years, covering merchandise in the same storehouse. On the day after the fire plaintiff informed defendant's agent, at his office, that the property insured had been destroyed by fire, when he was shown the policy which had been filled up and signed, and plaintiff then read it and handed it back to the agent, and never afterwards saw it. On the trial, the defendant having failed to produce the policy on notice, the plaintiff was examined in his own behalf as to its contents, and was allowed by the court, against defendant's objection, to look at one of the policies previously issued, and to testify that it corresponded with the one not produced, and in that way to prove the contents thereof. *Held,* that the court erred in allowing plaintiff to thus refresh his recollection, and in allowing him thus to prove the contents of the policy.

5. *When party on whom notice to produce paper writing can not offer parol evidence of its contents contradictory to that offered by opposite party.* In such case, the defendant having failed to produce on the trial the policy so signed and filled up, and to account for its absence, and the plaintiff having testified to its contents, the defendant can not be allowed to offer parol proof thereof different from that stated by the plaintiff, either for the purpose of showing what the true terms and provisions of the policy were, or for the purpose of contradicting the plaintiff.

6. *Fire insurance; recovery on policy issued after loss, in pursuance of prior parol agreement.*—If an application for insurance against loss by fire is made, and the terms agreed on prior to the loss, but the policy is not issued until after the loss, and the policy is so framed as to make the risk take effect from the date of the application, then a recovery may be had on the policy; but if, as in this case, the policy was not dated, and, on its face, was not made to take effect at any time, prior to its issue, there can be no recovery *on the policy,* on proof of an anterior parol agreement variant from, and not carried into the policy.

7. *Parol agreement to insure against loss by fire; when loss covered by.* A valid parol agreement made with a fire insurance company in October, that a policy for twelve months should be issued in the *early* part of November, would, *ex vi terminorum,* cover a loss occurring on the morning of the 19th of November.

8. *Fire insurance; when preliminary proof waived.*—Letters written by the general agent, and by the resident agent of a foreign fire insurance

company to the insured, notifying him that the company refused to pay the loss, placing the refusal on the express ground that there was no insurance on the property when it was destroyed, and making no allusion to the sufficiency or insufficiency of the preliminary proof of loss, are competent evidence to go to the jury, in a suit by the insured against the insurance company to recover the amount of insurance, on the question of a waiver of further preliminary proof, or of an implied admission that such proof was sufficient.

9. *Same; interest on.*—Where, by the terms of a contract of fire insurance, the insurance money is payable only at the expiration of two months after proof of loss, interest can not begin to run until that time has elapsed; and, in such case, the time when the proof of loss is furnished, is a question of fact, to be proved by the jury, and should be left to them by an appropriate charge.

10. *Fire insurance; limitation of risk to three-fourths of cash value.*—Under a clause in a policy of fire insurance that "in the event of loss by fire, the company should not be liable for more than three-fourths of the actual cash market value of the property insured, immediately prior to the loss," the assured carries one-fourth of the risk, and can not recover, in the event of a loss, more than three-fourths of the actual cash market value of the insured property that was destroyed; and such policy covering two classes of property in the same house, insuring each class for a stated amount, neither class, if deficient in value, can be supplemented by excessive loss on the other.

11. *Unpaid premium a credit on amount recoverable on policy.*—In an action on a policy of fire insurance, the defendant is entitled to a credit for unpaid premium.

APPEAL from City Court of Selma.

Tried before Hon. JONATHAN HARALSON.

The nature of this suit, and most of the material facts disclosed by the record, are sufficiently stated in the opinion; and it is only necessary to here make the following supplemental statement: The first policy issued, dated September 30th, 1876, and numbered 174, was turned over to the plaintiff by Kayser, defendant's agent at Selma, after the loss; the second policy, dated November 5th, 1877, and numbered 281, and the third policy, dated November 19th, 1878, and numbered 388, were returned by Kayser to the defendant's general agents, at Atlanta, Georgia, the first of these, in January, 1878, as cancelled, and the other, after the loss, as having been issued after the property insured was destroyed, and, therefore, as inoperative. Neither of these two last mentioned policies was produced on the trial, and the only proof offered, accounting for their absence, was that neither Kayser nor the defendant's attorneys had them in their possession. The plaintiff, who was examined as a witness in his own behalf, in testifying touching the contents of these two policies, stated, in substance, that the policy first issued differed from the policy dated November 19th, 1878, among other things, in that the latter policy did not contain the following provision, which was in the former: "It being understood and agreed that, in the event of loss by fire under this policy, this company shall not be liable for more than three-fourths of

[Home Insurance Co. v. Adler.]

the actual cash market value of the property hereby insured, immediately prior to such loss." The defendant offered to prove by Kayser, who was examined by it as a witness, that this clause was in the policy of November 19th, 1878, but the plaintiff objected to the offered proof, on the ground that the policy had not been produced by the defendant as required by notice duly served upon it, and that it could not, therefore, offer parol proof as to the contents of said policy, or any part thereof. The court sustained the plaintiff's objection, and refused to allow the proof to be made, and the defendant excepted. The defendant then offered to make the same proof solely for the purpose of contradicting the plaintiff, but the court, on plaintiff's objection, refused to allow it, and the defendant excepted.

The plaintiff testified that "soon after the fire and before the commencement of this suit, he made out and furnished defendant with proof of his loss by said fire, and that no objection had been made as to the form or sufficiency of said proof." The exact date when this proof was made, is not shown, nor was it introduced in evidence. In this connection he also testified that he received two letters, one from Kayser, and the other from J. E. Johnston & Co., the defendant's general agents, both of which were introduced in evidence, against the defendant's objection. The contents of these letters are sufficiently indicated in the opinion. The plaintiff further testified that the value of the stock of goods insured and destroyed by the fire was between $3,000 and $4,000, and that he estimated the value of the household goods insured and destroyed at $500 or $600.

The court, in its general charge, instructed the jury, *inter alia*, as follows: (1) "That if the plaintiff is entitled to recover, he is entitled to interest from the date of the letter from J. E. Johnston & Co. to the plaintiff, read in evidence." (2) "That if the plaintiff is entitled to recover, he is entitled to recover such damages as he sustained by the fire, not exceeding the amount of the policy on which they may give damages, or the amount of the agreement to insure." (3) In substance, that although the policy of November 19th, 1878, was issued after the fire, yet, if it was agreed between the parties that the policy should have been issued before the fire, then the plaintiff may recover on that policy. To each of these instructions the defendant excepted.

The defendant also reserved exceptions to the refusal of the court to give the following, among other, charges requested by it in writing: (1) "If you find from the evidence that the defendant issued to plaintiff a policy numbered 388 for $1,500, as described by the plaintiff, on the 19th day of November, 1878,

with risk to commence on the 19th day of November, 1878, to continue for one year; and if they further find that before said policy was written, the property described in that policy as insured was destroyed by fire, then the plaintiff can not recover in this action on that policy of insurance." (2) "If the jury find from the evidence that the defendant issued to plaintiff a policy numbered 281 for $2,000, as described by the plaintiff, on the 5th day of November, 1877, with the risk to commence on the 5th day of November, 1877, to continue for one year; and if they further find after the expiration of the policy, to-wit: after the 5th day of November, 1878, the property described in that policy as insured was destroyed by fire, then the plaintiff can not recover in this action on that policy of insurance." (3) "If the jury believe from the evidence that on or about the 19th day of October, 1878, the plaintiff and A. Kayser, as the agent of the defendant, entered into an agreement, whereby the said Kayser agreed for and on behalf of the defendant to issue to the plaintiff a policy of insurance on the stock of goods and the other personal property described in the evidence for $1,500; but that the time when said policy was to be issued was not definitely agreed on, but it was to be issued at some time in the early part of November 1878; and if they further believe from the evidence that the amount of the premium was not agreed upon at the time, and that there was no agreement as to the period of time to be covered by the policy, then said agreement was incomplete and not binding either upon the plaintiff or defendant; and if the jury further find from the evidence that policy No. 388 for $1,500, was not issued until the 19th day of November, 1878, and after the property described in said policy as insured was destroyed by fire, although it was destroyed on the same day the policy was issued, then the plaintiff can not recover on said policy."

The rulings of the City Court above noted are among the assignments of error here made.

PETTUS & DAWSON, for appellant.—(1) It is not denied that a verbal contract of insurance may be made, and a recovery had thereon; nor is it contended that parties may not make a valid contract for a policy to be issued at a future day, if all the terms of the policy to be issued, and the *time* when it is to be issued are agreed on. But if such agreement be made, and no policy is issued until after the property is destroyed, it is insisted that, although a recovery may be had on the contract to issue the policy, none can be had *on the policy issued.*—19 How. (U. S.) 318. (2) All the terms of a parol contract to insure must be agreed on by the contracting parties, or else the contract is incomplete.—May on Ins. p. 41, § 43. (3) The letters

[Home Insurance Co. v. Adler.]

written by J. E. Johnston & Co. and by Kayser to plaintiff were not admissible for the purpose for which they were offered. They were irrelevant, because no question was raised in the case as to proof of loss. (4) The court erred in allowing plaintiff, when examined as a witness, to look at the first policy issued, and to testify that it corresponded with the other two. Best on Ev. § 483. (5) The refusal of the court to permit the witness Kayser to testify to the contents of policy No. 388, especially for the purpose of contradicting the plaintiff on that point, was error. It may be that the defendant, having failed to produce the policy, could not, as original evidence for itself, prove by parol the contents of the policy; but the question did not so arise. The plaintiff, as a witness for himself, had testified as to the contents of the policy, and, in such case, the defendant had a right to rebut parol evidence by parol evidence. (6) The charge as to the amount of damages is clearly erroneous. There were several contracts sued on, one being the policy issued on 19th November, 1878, for $1,500. This policy *separates* the amount of insurance, placing part of it on the merchandise, and part on household goods; but the charge blends the two amounts into one sum, and spreads it over *all things insured.* (7) The charge of the court as to the date when interest commenced to run was clearly an invasion of the province of the jury. The loss was payable *sixty days after* notice and proof of loss When this time expired, and when the letter referred to in the charge was written, were questions for the jury. Besides, the letter was read in evidence solely for the purpose of showing a waiver of proof of loss. If it amounted to such waiver, then interest would commence, not at the date of the waiver, but sixty days thereafter.

BROOKS & ROY, *contra.*—(1) To perfect a contract of insurance, "it is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount and the rate of the insurance are ascertained or *understood*, and the premium paid, if demanded;" and if all the terms are not specified, "it will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or as have been used before between the parties."—*Eames v. Home Ins. Co.*, 4 Otto, 621; May on Ins. § 1, 3. (2) And a parol contract of insurance is as valid and binding as if in writing.—May on Ins. §§ 14, 23–4; *Ins. Co. v. McMillan*, 31 Ala. 711; *Ala. Gold Life Ins. Co. v. Mayes*, 61 Ala. 163. (3) Credit may be given for the premium; and it may be arranged in a running account, taken in trade, paid by the agent himself, or in any other way agreed upon. "The obligation to pay the premium is the pre-

mium."—*Sheldon v. Ins. Co.*, 25 Conn. 207; May on Ins. § 360; *Ins Co. v. Colt*, 20 Wall. 560. (4) Where a policy has been filled out in pursuance of a preliminary agreement to insure, the assured may sue and recover upon the policy itself, though it was written after the loss occurred, and has never been delivered, but has remained in the possession of the insurer all the while.—*Ins. Co. v. Colt*, 20 Wall. 560; May on Ins. §§ 43 –5, 60: *Kohne v. Ins. Co.*, 1 Wash. (C. C.) 93; *Lightbody v. Ins. Co.*, 23 Wend. 18; *Davenport v. Ins. Co.*, 17 Iowa, 276; *Sheldon v. Ins. Co.*, 25 Conn. 207. (5) Or the assured may proceed in various modes to enforce the parol contract of insurance, irrespective of the writing.—May on Ins. §§ 565, 43–4; 31 Ala. 712; 20 Wall. 560; 4 Otto, 621; 18 Barb. 69; 16 Gray, 448. (6) The assured can maintain his action for damages for the breach of the agreement to insure, as in the 6th count in the case at bar.—31 Ala. 712; 18 Barb. 69; 9 How. 390. (7) An agent authorized to take risks, effect insurance, and make contracts in that behalf, especially when so acting in this State for a foreign corporation, is a general agent, and the defendant is as much bound by his acts and declarations in the premises as if they proceeded from the principal.—Con., Code, 1876, p. 148, § 4; May on Ins. § 151; 20 Wall. 560; 16 Gray, 454; 25 Conn. 221; 58 Ala. 485. (8) The mode of proof of the contents of the policy adopted was the only one practicable of so voluminous a document, and defendant's objections were properly overruled.—4 Otto, 629; 28 Ala. 213. (9) The letters introduced in evidence were competent for the purpose of showing that defendant had waived any objection to the form or sufficiency of the proofs of loss.—*Ins. Co. v. Crandall*, 33 Ala. 9. (10) The defendant, having failed to produce the original policy numbered 388, could not offer secondary evidence of its contents. The rule in such cases is so strict, that "after notice and refusal to produce a paper, and secondary evidence given of its contents, the adverse party can not afterwards produce the document as his own evidence."—1 Greenl. on Ev. p. 600, and notes; §§ 560–3; *Doe v. Hodgson*, 12 Ad. & El. 135; 40 Com. Law, p. 44; *Bogart v. Brown*, 5 Pick. 18; 4 Ala. 159; 28 Ala. 200.

STONE, J.—The appellee—plaintiff below—a resident of Wilcox county, was engaged in merchandise, and obtained insurance on his goods from the appellant, through Kayser, their agent, who had his office in Selma, Alabama. The plaintiff, Adler, had previously obtained two policies from the same company and through the same agent, insuring merchandise in the same storehouse. The first of these policies was issued September 30th, 1876, and expired twelve months afterwards. The sum of insurance secured by this policy was three thousand dol-

[Home Insurance Co. v. Adler.]

lars, and the agreed premium was 2½ *per cent.* The second policy was issued November 5, 1877, and expired at noon, November 5, 1878; amount insured two thousand dollars, and rate of premium 2½ *per cent.* A third policy was filled up and signed by Kayser, the agent, dated November 19th, 1878, to run for twelve months from 12 o'clock noon of that day. The insurance provided by this policy was fifteen hundred dollars—twelve hundred on the merchandise, and three hundred on the furniture of the assured, who had his residence in the building in which he kept and sold his merchandise; rate of premium the same—2½ *per cent.* It was proved, and not denied, that Adler, the assured, left his policies of 1876 and 1877 in the custody of Kayser, the agent, for safe keeping. and that the latter kept them locked up in his safe. It will thus be seen that from noon November 5th, 1878, to the 19th day of that month, there was no written policy insuring Adler's merchandise. The store and merchandise, and dwelling and most of the furniture were destroyed by fire about an hour before daybreak on the morning of November 19th, 1878. This was before the policy of that date, for fifteen hundred dollars, was filled up and signed by the agent, Kayser; but the latter did not know of the burning, until after he had so filled up and signed the policy. The present suit is brought to recover for the alleged loss of · the merchandise and furniture.

The complaint in the present action contains six counts. The first count claims damages on an alleged policy of insurance issued by the defendant company November 5th, 1878, insuring goods, wares and merchandise for one year. The second count claims damages on an alleged agreement of defendant, through its agent, to issue to plaintiff a policy on his merchandise for the same sum, to bear date November 5th, 1878, and to run one year; and that defendant failed and neglected to issue the policy. The third count is on an alleged insurance of two thousand dollars on merchandise, commencing on same date, November 5th, and running one year, without stating the form in which the contract was entered into. The fourth count charges that defendant corporation insured plaintiff's merchandise in the sum of two thousand dollars, by its policy issued November 5th, 1877, and to run one year, and agreed to renew the said policy for one year, commencing November 5th, 1878, but failed and neglected to issue the renewal policy. The fifth count, like the third, avers a contract of insurance to commence November 5th, 1878, and to run one year; but fails to charge whether the contract was in writing or not. The sum averred in this count to have been insured is fifteen hundred dollars, on "goods, wares and merchandise, household furniture, bedding and wearing apparel." The sixth count, like the second, de-

clares on an agreement to issue a policy, to bear date and run from November 5th, and a neglect and failure to do so; the amount and subject of insurance the same as in the fifth count. Each of these counts avers a consideration, and a loss by the burning, greater in amount than the sum insured. The defendant took issue on the several counts, and does not here question the sufficiency of either. On the contrary, counsel admit that a valid contract of insurance may be made in parol, if all the terms be agreed on. Such certainly is the law.—*Mobile Marine Dock & Mut. Ins. Co. v. McMillan*, 31 Ala. 711; *Ala. G. L. Ins. Co. v. Mayes*, 61 Ala. 163. Some of the adjudged cases—perhaps a majority of them—arose on bills in equity, praying, first, specific performance of the agreement to issue the insurance policy. Under these bills, the court having acquired jurisdiction for the alleged purpose of specific performance, retained the cases, as is its wont, and granted to complainants complete redress—such as they would have been entitled to in suits on the policies, if remitted to the law forum.—*Eames v. Home Ins. Co.*, 94 U. S. 621; *Tayloe v. Mer. Fire Ins. Co.*, 9 How. (U. S.) 390; *Com. Mut. Ins. Co. v. Un. Mut. Ins. Co.*, 19 How. (U. S.) 318; *Ala. Gold Life Ins. Co. v. Mayes*, 61 Ala. 163. We need not inquire whether, in the absence of a special equity, a bill should be entertained for the specific performance of a contract in relation to personalty. That question does not arise in this cause. As we have said, counsel in this case admit an action at law may be maintained, if all the terms of the contract were agreed upon, so as to cover the *time* of the loss, and the breach consisted in the failure to issue the policy, as agreed on. Many authorities sustain this view, and we think them sound.—*Mobile Marine Dock & Mut. Ins. Co. v. McMillan*, 31 Ala. 711; May on Ins. §§ 43 *et seq.; Ib.* § 565; *Ins. Co. v. Colt*, 20 Wall. 560; *Sanborn v. Fireman's Ins. Co.*, 16 Gray, 448; *Sheldon v. Conn. Mut. L. Ins. Co.*, 25 Conn. 207; *First Bap. Ch. v. Brooklyn Fire Ins. Co.*, 18 Barb. 69.

As we have shown, the complaint in the present cause states the plaintiff's claim in almost every conceivable form: On the policy, as if issued, on an agreement to renew a policy previously issued which expired before the loss, and on an agreement to issue a new policy, differing somewhat from the former one in the subject and amount insured. The policy issued November 5, 1877, and expiring November 5, 1878, was for two thousand dollars insurance on merchandise. If there was any agreement to insure for the next year, that agreement was entered into between Adler and Kayser, the agent, about October 20th, 1878. Adler and Kayser agree in fixing this as the time. They do not agree in their statement of the subject, or the amount of the insurance. Adler states it was to be a policy insuring his

[Home Insurance Co. v. Adler.]

merchandise to the extent of two thousand dollars; in effect, a counterpart or renewal of the policy of 1877. Kayser states the subject and sum of the insurance, pretty much as the same are set forth in the fifth and sixth counts of the complaint. The finding of the jury indicates that they fixed the amount of their verdict at Kayser's figures. Adler and Kayser agree substantially in this: That, about October 20th, 1878, there was an agreement between them that the defendant insurance company would issue to the plaintiff a policy of insurance, to be issued in the early part of November then following. Sterne, another witness, proves substantially the same thing. We have shown above wherein they differed as to subject and sum. It is not shown that in the alleged agreement of October 20th any thing was said as to the rate of premium, the duration of the policy, or of the payment of the premium. Nor does it appear that any of the stipulations or details of the policy were agreed upon, or mentioned. It is here contended that because the terms and details were not agreed upon, and because the premium was not prepaid, there was no contract made, and there can be no recovery in this action. Such would doubtless be the case, if there had been no previous dealings between them. In this connection comes in the question of the admissibility of the former policies as evidence. It will be borne in mind that Adler, the plaintiff, had previously obtained two policies of insurance on the goods in the same storehouse, from the same agent, and in the same insurance company—"The Home Insurance Company" of New York. The first policy was issued in 1876, and the second on the 5th November, 1877; each, by their terms, to run a year. It was testified, both by Adler and Kayser, that the premium was not required to be paid, nor was in fact paid in advance. The premium on the policy first issued was afterwards paid in full, in a settlement had between Adler and Kayser. The testimony tends to show that the matter of credit on the premiums rested in a private understanding between Adler and Kayser, the agent, and the latter was in the habit of paying them, and of trusting Adler for reimbursement. They had private dealings with each other at the time. There was contradictory testimony as to notice to Adler, requiring payment of the premium on the second policy. Kayser testifies that policy was cancelled for non-payment of premium, on the 5th of January, 1878, and that Adler paid for only the two months covered by the policy, before it was cancelled. Adler's testimony tended to show he had paid the whole premium, and he denied all notice or knowledge that any step would be, or was taken for the cancellation of the policy. It was proved, and admitted by Kayser, that long after the alleged cancellation he, Kayser, admitted to Sterne, who was about to sell Adler a

bill of goods, that the merchandise of the latter was under insurance. He added, the policy was about to expire, which tends to show he had reference to the policy of 1877, which would, by its terms, expire some fourteen days afterwards. This was the policy Kayser testified had been cancelled nine or ten months previously. We can not perceive how the question of the cancellation *vel non* of this policy can exert any influence in the determination of this suit, except that it may have some bearing on the credibility of the testimony. It constituted a part of the history of the transaction, and, as such, it was perhaps legitimate testimony.

The conversation alleged to have taken place between Adler and Kayser, about October 20, 1878, would not, unaided, amount to a valid contract of insurance, or agreement to insure. It wanted very many essential details. There was no mention of the place or house in which the goods were to be insured, of the rate of premium, or where to be paid, or of the duration of the policy, or of many other stipulations and details found in such policies. Looking alone to that conversation, we can not affirm all the terms necessary to consummate such contract were agreed upon. But the parties had had previous dealings in relation to a subject-matter identical in principle. Those dealings showed in what place and house the merchandise was kept, which was covered by the former policies, the rate of premium paid, or to be paid, the length of time—one year—the policy would run, and the many specifications and details embodied in the policies. They also tended to show that in prior dealings between these parties, pre-payment of premium had not been exacted. Proof of these previous dealings would authorize the inference that when Adler requested insurance, and Kayser agreed to issue the policy early in November, all the previous terms were impliedly understood and adopted, except to the extent they expressed and agreed otherwise. The former policies were clearly admissible in evidence. *Harkins v. Pope*, 10 Ala. 493; *Crommelin v. Thiess*, 31 Ala. 412; *Rainey v. Capps*, 22 Ala. 288; *Wolffe v. Wolff*, 69 Ala. 549.

There was another use permitted to be made of the policy of 1876, which was the subject of exception. After the destruction of the goods by fire, but later on the same day, Kayser, the agent, filled up and signed a policy, corresponding to that described in the fifth and sixth counts in the complaint. This he did in ignorance that the goods had been destroyed. He deposited it in his safe. The policies previously issued to Adler had been, at his request, similarly deposited and kept. On the day after the fire, Adler informed Kayser, at his office, that the goods had been burned. The policy was then shown to

Adler, and he testified that he read it. He then handed it back to Kayser, and never afterwards saw it. Notice had been properly served on defendant to produce this policy, and also the one issued in 1877. They were not produced, and Adler was examined as to their contents. In giving his evidence, he was allowed to look at the policy of 1876, which he testified corresponded with the other two, and, in that way, to state the contents of those not produced. In *Acklen v. Hickman*, 63 Ala. 494, we defined two classes of cases, in which a witness may use a memorandum made by him, or known to him to be correct. The present case is scarcely shown to fall within either class.—See *Mims v. Sturdevant*, 36 Ala. 636; 1 Greenl. on Ev. §§ 436–7. Nor does this case fall within Mr. Greenleaf's third class.—*Ib.* § 437.

Can there be a recovery on either of the written policies? We have shown that one of the policies—the second—expired at 12 o'clock noon, November 5, 1878. The third and last policy was issued November 19, 1878, and insured the merchandise and goods from 12 noon of that day. Between these dates the goods were burned. There are cases where an application for insurance is made, and the terms agreed on, but the policy is not issued until after the property is destroyed, some time afterwards. In such case, if the policy be so framed as to make the risk take effect from the date of the application—a time before the loss—then a recovery may be had on the policy. This is clearly right, for the policy is but the written evidence of a contract previously entered into.—May on Insurance, § 44; *Ins. Co v. Colt*, 20 Wall. 560; *Sheldon v. Com. Mut. L. Ins. Co.*, 25 Conn. 207; *Lightbody v. Nor. Amer. Ins. Co.*, 23 Wend. 18; *City of Davenport v. P. Fire & Marine Ins. Co.*, 17 Iowa, 276. The present case, however, is different. The policy was not dated, nor, on its face, was it made to take effect at any time before it was issued. The property claimed to have been insured was burned before the date or issue of the policy. Actions at law, founded on written instruments, can be maintained only on the terms expressed, or interpreted to be expressed or implied in the instrument itself. Parol proof of an anterior agreement, variant from, and not carried into the instrument, can not, in a suit at law on the writing, be the basis of a recovery. There can be no recovery on the facts of this case on either of the written policies shown in the testimony. We may add, however, that if, under the rules stated above, there was an agreement that a policy should be issued in the *early* part of November, that would, *ex vi terminorum*, have been in time to cover a loss occurring on the morning of the 19th November.

Objection was made to the admissibility in evidence of two

letters; one from Kayser, the agent at Selma, and the other from the general southern agency of the insurance company at Atlanta, Georgia. These letters gave notice to Adler of a refusal of the company to pay the alleged loss. They placed the refusal on the express ground, that there was no insurance on the goods when they were destroyed. They made no allusion to the sufficiency or insufficiency of the preliminary proofs of loss. They were competent evidence to go to the jury on the question of waiver of further preliminary proof, or of an implied admission that such proof was sufficient.—May on Insurance, § 569. And such refusal to pay by the resident agent of a foreign insurance company should have the same effect, direct and incidental, as if made by the company itself.—Code of 1876, § 1434; *Piedmont & Arl. Life Ins. Co. v. Young,* 58 Ala. 476.

The court did not err in refusing to allow defendant to make oral proof of the contents of the written policy, or any part of it. There was no proof of its loss or destruction, or that defendant lay under any disability to produce the policy itself.

The insurance money, if payable at all, was due and payable at the expiration of two months after proof of loss. Interest could not begin to run till then. When the proof of loss was furnished, was a question of fact to be found by the jury, and should have been left to them in an appropriate charge.

One of the terms of the policy of 1876 was, "that in the event of loss by fire, the company should not be liable for more than three-fourths of the actual cash market value of the property insured, immediately prior to the loss." If the terms of the insurance agreed to be taken by the company in the early part of November, 1878, as alleged, were to be, in all non-expressed particulars, the same as those found in the policy of 1876, then this clause should have been given in charge to the jury. The purpose and policy of such clause are, that the assured shall carry one-fourth of the risk. It follows that the plaintiff could not recover for the loss he sustained by the burning more than three-fourths of the actual cash market value of the insured goods that were burned. And this should be stated distributively. The goods, wares and merchandise, it is charged, were insured for twelve hundred dollars. To justify a recovery on this account for the full sum, their actual cash market value, immediately prior to the loss, must have been sixteen hundred dollars. Falling below that sum, the recovery on this account should be scaled down correspondingly. So of the three hundred dollars risk on the furniture, bedding and wearing apparel. To justify a full recovery on this clause, the loss at cash market value must, immediately prior to the burning, have been as much as four hundred dollars. And neither class,

[Driggers v. Cassady.]

if deficient in cash market value, can be supplemented by excessive loss on the other class. It should be stated, that if defendant is held liable, a credit should be allowed for the unpaid premium.

Several rulings of the City Court were opposed to these views. We need not specify them.

Reversed and remanded.